**George S. MUNSON and Katharine S. Munson, Appellants,**

v.

**Edgar A. McGINNES, Individually and as United States District Director of Internal Revenue for the Internal Revenue District of Philadelphia, Pennsylvania.**

**No. 13086.**

United States Court of Appeals Third Circuit.

Argued Feb. 18, 1960.

Decided June 8, 1960.

Rehearing Denied July 25, 1960.

Certiorari Denied Nov. 7, 1960.

See 81 S.Ct. 171.

Frederick E. S. Morrison, Philadelphia, Pa. (Calvin H. Rankin, Ernest L. Nagy, Drinker, Biddle & Reath, Philadelphia, Pa., on the brief), for appellants.

Frederick E. Youngman, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Atty., Dept. of Justice, Washington, D. C., Walter E. Alessandroni, U. S. Atty., Philadelphia, Pa., on the brief), for appellee.

Before BIGGS, Chief Judge, and STALEY and HASTIE, Circuit Judges.

HASTIE, Circuit Judge.

This is an appeal from an order of a district court granting a motion of the defendant Director of Internal Revenue to dismiss the plaintiff taxpayer's [1] suit for a refund of income taxes as failing to state a valid claim for relief. In

---

1. Although this litigation involves a joint return of George S. Munson and his wife Katharine S., the husband will be referred to as the taxpayer.

dispute is the manner in which the taxpayer is entitled to deduct a $110,000 attorney's fee in the computation of his income tax. The circumstances under which this fee was paid, set forth in the taxpayer's claim for refund and recognized by the government as correct, are these.

The fee was paid for professional services in winning a litigated controversy about a sale of the stock and assets of the Williamsport Wire Rope Co. to Bethlehem Steel Co. In 1936 Bethlehem owned bonds of Williamsport which were in default. Plaintiff owned a substantial amount of Williamsport stock. Bethlehem caused Williamsport to be placed in receivership and the mortgage to be foreclosed. With Williamsport thus embarrassed the taxpayer and the other Williamsport stockholders accepted an offer of Bethlehem to buy their stock. The receiver then sold the Williamsport assets to Bethlehem, which thereafter completely liquidated Williamsport.

A few years later former Williamsport stockholders, among them the plaintiff, sued in the court where the Williamsport receivership had been administered asking that the matter be reopened, the scheme by which Bethlehem acquired the Williamsport assets be declared fraudulent and that these assets be traced, identified and returned to the former Williamsport stockholders.

The court found that the sales of Williamsport stock to Bethlehem and the acquisition of Williamsport assets by Bethlehem had resulted from fraud and that Bethlehem should be declared constructive trustee of such stock and assets for the defrauded Williamsport stockholders. Guaranty Trust Co. of New York v. Williamsport Wire Rope Co., D.C.M.D.Pa. 1952, 107 F. Supp. 759. Pending disposition of a motion for new trial, Bethlehem proposed and plaintiffs in that action agreed to a settlement of the entire controversy. The court considered this proposal, found it equitable, vacated judgment, filed a second opinion and entered judgment accordingly. 107

F.Supp. 762. In this final disposition the court stated that the administration of the Williamsport receivership had been so fraudulent as to warrant the setting aside of the sale of the Williamsport properties but that Bethlehem, which had benefited from the fraud, had not been party to it. The remedy decreed was the payment of an additional $6,000,000 by Bethlehem to the former Williamsport stockholders. To accomplish this Bethlehem was ordered to deposit both $6,000,000 and the certificates of Williamsport stock it had acquired from the former stockholders with the court so that the former stockholders might be identified and the $6,000,000 properly allocated among and distributed to them. This was done and the share of the fund allocated and paid to taxpayer was approximately $220,000, out of which he paid the $110,000 counsel fee which is the subject of the present controversy.

It will be observed that the theory of claim in the above-described proceeding was that fraudulent misconduct had caused stockholders to part with their Williamsport stock. And the agreed and decreed remedy was the payment of additional money to these sellers by the purchaser of the stock. Accordingly, in his 1954 income tax return taypayer treated the proceeds of the litigation as additional consideration for his Williamsport stock, from which he realized long term capital gain. He did this by subtracting from the $220,000 awarded him the portion of his stock basis not used up by the payment originally received from Bethlehem and treating the difference as capital gain. However, in this computation he did not subtract from the $220,000 awarded him, the $110,000 which he was required to pay counsel for successfully asserting and litigating this claim. Instead, he treated this fee as "an ordinary and necessary [expense] paid or incurred during the taxable year * * * for the production or collection of income", fully deductible from gross income under Section 212(1) of the 1954 Internal Revenue Code, 26 U.S.C. § 212(1).

The Commissioner disallowed the deduction as claimed and treated the fee as an item to be taken into account as an offset reducing the capital gain realized on the sale of stock. He assessed a deficiency accordingly. The taxpayer paid the deficiency assessment and brought this suit for the recovery of the amount thus paid. The district court denied the claim and the taxpayer has appealed.

A nonbusiness expense related to the sale of property may arguably be viewed in either of two ways. First, it may be treated as a capital expenditure to be taken into account as reducing the capital gain realized through the sale. See Sections 1001(a), 1011, 1016(a) (1), Int. Rev.Code of 1954, 26 U.S.C. §§ 1001(a), 1011, 1016(a) (1). In such circumstances, for income tax purposes the expense is added to the taxpayer's basis for the property and this aggregate subtracted from the selling price to determine the amount of taxable capital gain. From the taxpayer's point of view this is the less favorable procedure since it merely reduces the capital gain, which is less severely taxed than ordinary income.

On the other hand, a nonbusiness expense related to selling may qualify for a more advantageous deduction from gross income as an "ordinary and necessary [expense] * * * for the production or collection of income" under Section 212 of the 1954 Code. This possibility is suggested and emphasized by the explicit provision of the Regulations promulgated under Section 212 that "the term income for the purpose of Section 212 * * * is not confined to recurring income but applies as well to gains from the disposition of property". C.F.R. 1960, § 1.212–1(b). However, the same section of the Regulations makes it clear that all expenses connected with the gainful disposition of property are not thus deductible. Indeed, it is explicitly stated that deductions for "capital expenditures are not allowable * * *" § 1.212–1(n). The sense of this seems to be that a capital expenditure is not to

be treated as an "ordinary * * * expense" within the meaning of Section 212.

It will be noted that this problem is not likely to arise where expenditures are deducted under Section 212 as costs of "collection" of income, since conceptually expenses of "collecting" income are not expenses of a capital transaction. If chronology were decisive the present case might be characterized as presenting such a cost of collection, since the dispute arose after a sale was agreed upon and consummated. More analytically, if terms of sale have been agreed and subsequent controversy concerns no more than enforcement of these terms against a defaulter the problem is one of "collection". Naylor v. Commissioner, 5 Cir., 1953, 203 F.2d 346. If the problem is to reach mutually satisfactory or binding terms of sale, the problem is one of disposing of the property, not of collection, and the question of capitalization must be faced.

Here there was no dispute as to what the original terms of sale were and no difficulty in obtaining the buyer's compliance with them. Rather, there was a successful effort to establish that the original terms of sale were so unjust as a result of underlying fraud that equity should require their modification to provide the seller a larger consideration. We need not say, as the government urges, that the seller reacquired and resold the stock to conclude that what occurred was in substance and reality an equitable revision of the original terms of sale. Thus, the counsel fee in question was, to one in the seller's position, an expense of modifying terms of sale, incurred as an essential incident of a capital transaction in the disposition of property. Our problem is to decide whether it is the kind of selling expense which must be capitalized, and the "collection" cases do not help us.

In rationalizing such capitalization and the restriction it imposes on the deduction of expenses under Section 212 (1), courts have relied greatly upon the treatment which has long been accorded

equivalent language in the much older provision, now Section 162 of the 1954 Internal Revenue Code, 26 U.S.C.A. § 162, authorizing the deduction of ordinary and necessary business expenses. It is now authoritatively established that the two sections are *in pari materia*. Bingham's Trust v. Commissioner, 1945, 325 U.S. 365, 65 S.Ct. 1232, 89 L.Ed. 1670; McDonald v. Commissioner, 1944, 323 U.S. 57, 65 S.Ct. 96, 89 L.Ed. 68. Accordingly, it has been reasoned that in those situations where the capitalization of business selling expenses is a long established and accepted requirement, despite Section 162, equivalent or closely analogous nonbusiness expense must also be capitalized and used only as an offset to capital gain, despite Section 212 (1). On this basis, selling commissions, required to be capitalized in the regulations concerning the deduction of business expenses, C.F.R., 1960, § 1.263 (a)–2(e), but not mentioned at all in the regulations under Section 212, are equally deductible in both situations. Davis v. Commissioner, 8 Cir., 1945, 151 F.2d 441, applying to a commission paid for a nonbusiness sale, the rule of Spreckels v. Commissioner, 1942, 315 U.S. 626, 62 S.Ct. 777, 86 L.Ed. 1073, a business expense case. This concept also embraces fees paid to lawyers for negotiating sales. Dwight A. Ward, 1953, 20 T.C. 332. Similar treatment has been accorded expenses of a seller for revenue stamps and title abstracts. Mrs. E. A. Giffin, 1930, 19 B.T.A. 1243. And, in a case involving nonbusiness expenses, a seller has been required to capitalize not only selling commissions but also the cost of an underwriter's commission and S.E.C. registration in connection with a sale of securities. Davis v. Commissioner, *supra*.

Two circumstances seem to characterize this group of selling expenses. First, they are incurred either to achieve an enforceable bargain or to complete essential formalities of sale. They are peculiarly selling expenses rather than collection expenses, as these categories were distinguished early in this opinion. Second, each is in itself a distinct item of cost incurred and necessary solely to facilitate a particular capital transaction. There is no problem of allocation such as is created by expenditures like overhead costs which have general significance for gainful transactions but require artificial pro rata allocation to bring them into proximate relation with any particular selling. Each expense which must be capitalized presents the simple economic reality of a particular cost of a particular capital transaction.

The present legal fee exhibits the same characteristics. Therefore, we think it belongs in the same category of capital expenditures.

It deserves mention that this conclusion is in harmony with, though not controlled by, the numerous cases which require capitalization of expenses incurred in vindicating title to property. E. g., Garrett v. Crenshaw, 4 Cir., 1952, 196 F.2d 185; Helvering v. Stormfeltz, 8 Cir., 1944, 142 F.2d 982. Such cases are not controlling here because they relate to costs of an effort to retain or retake property rather than to sell it or establish acceptable terms of disposition.[2] Yet, it seems anomalous to require capitalization of expenses of the party who is on one side of a negotiation or controversy over the disposition of a capital asset while permitting the opposing party to claim an ordinary deduction of his equivalent expenses. Thus, the court below was impressed by the anomaly of a rule which would compel Bethlehem to capitalize its costs of defending the present proceeding, as cases like Condenser Service & Engineering Co. v. Commissioner, 3 Cir., 1953, 200 F.2d 959 and Murphy Oil Co. v. Burnet, 9 Cir., 1932, 55 F.2d 17, require, yet would permit the taxpayer to claim a general deduction for his costs in prosecuting the same litigation. True, the one

2. We have not discussed the Regulation covering such expenses because it too is inapplicable to the disposition of property as distinguished from its retention or recapture. C.F.R., 1960, § 1.212–1(k).

party comes directly under the Regulation defining the defense of title exception to the allowance of a deduction for ordinary expenses, § 1.212–1(k), while the other does not. Yet, it seems fair and sensible to accord like tax treatment to the litigation expenses of both parties to a dispute over a particular disposition of property, where legal basis can be found for doing so.

As an additional consideration, we are the more disposed to approve the capitalization of the item in suit because a contrary conclusion would enable a taxpayer to benefit inequitably from the circumstance that ordinary income and capital gains are taxed at different rates. Suppose the amount in excess of cost realized from the sale of a capital item is exactly equal to the expenditures necessary to accomplish the sale and allocable solely to it. If such expense is capitalized the taxpayer's return will show no capital gain and, for tax purposes, the entire transaction has no effect. This seems fair. But if the taxpayer reports his profit apart from this expense as a capital gain and then deducts the expense from gross income, in which only a part of the capital gain is included, he actually reduces his income tax through a transaction which, in a business sense, has resulted in neither gain nor loss. We think this should not be permitted unless it is plainly required by the tax laws. We have already pointed out that in our view the tax laws may reasonably be construed in a way which avoids such a consequence.

Finally, we have not overlooked taxpayer's urging that Coke v. Commissioner, 1951, 17 T.C. 403, affirmed per curiam, 5 Cir., 1953, 201 F.2d 742, supports his claimed deduction. That was a case in which property belonging to a wife had been wrongfully withheld from her in a settlement made on divorce. Question arose as to the tax treatment of expenses she incurred in recovering from her divorced husband an amount which was viewed as both a recapture of what had been hers from the beginning and a recovery of the new value which accrued

during detention. On this basis part of the expense was treated as a capital expenditure for vindicating title to property, not deductible under Section 212, and part as a deductible ordinary expense of recovering income which had been wrongfully withheld from its owner. To us this distinction seems unrealistic. The wife was trying to recapture her property and accepted current value in cash in lieu of the property itself. We are unable to see how the form of the recovery prevented any part of the attendant expense from being a nondeductible expense of vindicating title. We think it would be a mistake to follow the guidance of the Coke case.

For these reasons the decision of the district court will be affirmed.