**IOWA SOUTHERN UTILITIES COMPANY, a Corporation, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 17377.**

United States Court of Appeals
Eighth Circuit.

June 25, 1964.

---

Charles T. Akre, of Miller & Chevalier, Washington, D. C., Robert Valentine, of Valentine, Greenleaf & Griffing, Centerville, Iowa, Marion Hirschburg, of Hirschburg, Reynolds, Gilchrist & Nutty, Ames, Iowa, and James F. Gordy, of Miller & Chevalier, Washington, D. C., for petitioner.

Norman H. Wolfe, Attorney, Tax Div., Dept. of Justice, Washington, D. C., Louis F. Oberdorfer, Asst. Atty. Gen., Tax Div., Dept. of Justice, Washington, D. C., Lee A. Jackson and Melva M. Graney, Attorneys, Tax Div., Dept. of Justice, Washington, D. C., for respondent.

Before VOGEL, BLACKMUN and RIDGE, Circuit Judges.

BLACKMUN, Circuit Judge.

The Tax Court has decided that there is a deficiency of $74,330.15 in Iowa Southern Utilities Company's 1955 fed-

eral income tax. Judge Mulroney's opinion, not reviewed by the full court, is T.C.Memo. 1962–267. The taxpayer has petitioned for review.

The sole issue before us is whether certain attorneys' fees and expenses incurred in a successful shareholders' derivative suit and directed to be charged to the taxpayer are deductible as "ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business" under § 162 (a) of the Internal Revenue Code of 1954, 26 U.S.C.A. § 162(a).

The facts are stipulated. The taxpayer is a public utility manufacturing and transmitting electrical energy. It has its principal place of business at Centerville, Iowa. It files its income tax returns on the accrual-calendar year basis.

In 1943 minority shareholders of the taxpayer instituted a derivative action in an Iowa state court against George M. Bechtel (the taxpayer's majority shareholder and its former president and director) and others. The complaint in that suit alleged, among other things, that Bechtel, his son Harold, and other named persons secretly acquired properties at prices far less than those at which they turned them in to the taxpayer, and had wrongfully appropriated these illegal excesses. The litigation, although not successful for the plaintiffs in the trial court, was brought to a conclusion in January 1952 when the Supreme Court of Iowa ordered, inter alia, that judgment based on the property manipulations be entered in favor of the taxpayer corporation and against the Bechtels and the Estate of J. Ross Lee in an amount exceeding $2,200,000. The court's lengthy and informative opinion is Des Moines Bank & Trust Co. v. George M. Bechtel & Co., 243 Iowa 1007, 51 N.W.2d 174 (1952).

Thereafter, in 1953 and 1954, the taxpayer collected over $487,000 for application on the Bechtel-Lee judgment. It did not report these collections as income.

The attorneys for the plaintiffs in the derivative suit then applied to the Iowa court for an allowance of fees and expenses. In June 1955 the court entered judgment in favor of the attorneys and against the taxpayer in an amount in excess of $160,000. This was paid by the taxpayer in 1955. In its income tax return for that year the taxpayer deducted the amount so paid as an ordinary and necessary business expense. Its disallowance, to the extent attributable to the Bechtel-Lee judgment, has resulted in the deficiency now in issue. (The portion thereof allocable to salary and interest items has been allowed and is not in issue here).

Judge Mulroney's approach was that the expenditure, in order to be deductible under § 162(a), must qualify as an expense; that money spent in acquiring or recovering capital is not an expense; that the recovery due to the property manipulations was one of capital; and that legal expenses in connection with such a recovery of capital are not deductible.

The taxpayer argues that it is oversimplification and ignoring reality to say, as the Tax Court did, that a recovery is either of income or of capital and that if it is of capital the expenses incurred with respect to it are not deductible; that legal fees and expenses incurred in the recovery of business assets are deductible as a business expense under § 162(a); that any limitations imposed upon the deductibility of nonbusiness expenses for individuals, under § 212, do not apply in determining deductibility of business expenses under § 162(a); that the Tax Court's rule that if a recovery is of capital the expenses are not deductible has application only to a deduction asserted under § 212; that the legal expenses paid here were not incurred in the acquisition or improvement of any property or in the perfection of title thereto; that the courts have uniformly held that fees and costs incurred in a shareholders' derivative action and assessed against the taxpayer corporation are deductible as ordinary and necessary expenses of the business;

and that, because cash rather than tangible property is involved here, the expenses cannot be added to the cost of cash and, if not now deductible, are permanently lost for tax deduction purposes.

This court has had more than one occasion recently to rule upon the question whether a payment qualified as an ordinary and necessary expense deductible under either § 162(a) or § 212, or as a capital expenditure not deductible under § 263(a), all of the 1954 Code, or under the corresponding sections of the 1939 Code. We have noted what we regarded as established rules, namely, (a) that, to be deductible, an item must be ordinary, necessary, and an expense; (b) that § 162(a) and § 263 are not mutually exclusive or all-inclusive; (c) that it is long settled that expenses of litigation made "to defend or perfect title to property" are capital expenditures constituting a part of the cost of the property and are not deductible (see, for example, Addison v. Commissioner, 177 F.2d 521, 523 (8 Cir. 1949); Lewis v. Commissioner, 253 F.2d 821, 827 (2 Cir. 1958)); (d) that, however, the mere fact that title to property happens to be involved in litigation does not necessarily mean that the litigation expenses are not deductible; and (e) that, under Welch v. Helvering, 290 U.S. 111, 114, 54 S.Ct. 8, 9, 78 L.Ed. 212 (1933), there is no "ready touchstone" for these cases, that the statutory standard "is not a rule of law; it is rather a way of life", and that "Life in all its fullness must supply the answer to the riddle" or, in other words, each case bears its own investigation and analysis and is to be decided accordingly. In re Buder's Estate, 330 F.2d 441, 443 (8 Cir. 1964); General Bancshares Corp. v. Commissioner, 326 F.2d 712, 714, 716 (8 Cir. 1964); Industrial Aggregate Co. v. United States, 284 F.2d 639, 644–45 (8 Cir. 1960); see Gravois Planing Mill Co. v. Commissioner, 299 F.2d 199 (8 Cir. 1962).

We observe, further:

1. There is no question heré that the subject matter of that part of the derivative suit which resulted in the Bechtel-Lee judgment was capital in nature, viz., the excessive portion of the purchase price of assets transferred to the taxpayer. The taxpayer does not contest this or that the collections effected and applied to the judgment were a return of capital. In fact, it treated the noninterest and non-salary portion of the recovery as capital, for it was not included as income in its returns. The assets in question were identified and are listed and described in the Iowa opinion, p. 1078 of 243 Iowa and p. 214 of 51 N.W.2d.

2. A deduction is dependent "upon the legislative policy expressed in the fair and natural meaning" of the statute. Lykes v. United States, 343 U.S. 118, 120, 72 S.Ct. 585, 586, 96 L.Ed. 791 (1952). The Court has also stated that a taxpayer has the burden of clearly showing its right to a claimed deduction. Interstate Transit Lines v. Commissioner, 319 U.S. 590, 593, 63 S.Ct. 1279, 87 L.Ed. 1607 (1943).

3. Whether an expense is ordinary and necessary and whether it is related to business "are doubtless pure questions of fact in most instances". Commissioner v. Heininger, 320 U.S. 467, 475, 64 S.Ct. 249, 254, 88 L.Ed. 171 (1943); Long v. Commissioner, 277 F.2d 239, 240–41 (8 Cir. 1960); General Bancshares Corp. v. Commissioner, supra, p. 717 of 326 F.2d; see Trust of Bingham v. Commissioner, 325 U.S. 365, 370, 65 S.Ct. 1232, 89 L.Ed. 1670 (1945).

4. Section 212 of the 1954 Code, authorizing the deduction of certain non-business expenses related to income, is restricted in its application to taxpayers classified as individuals and has no application to corporate taxpayers.

5. Section 212 is the successor (and, so far as is pertinent here, contains identical language) to § 23(a) (2) of the 1939 Code, as amended. Section 23(a) (2) came into being only with the enactment of § 121(a) of the

Revenue Act of 1942. Prior thereto the statute had restricted the deduction for an ordinary and necessary expense to one paid or incurred in carrying on any trade or business. Higgins v. Commissioner, 312 U.S. 212, 61 S.Ct. 475, 85 L.Ed. 783 (1941); City Bank Farmers Trust Co. v. Helvering, 313 U.S. 121, 61 S.Ct. 896, 85 L.Ed. 1227 (1941); United States v. Pyne, 313 U.S. 127, 61 S.Ct. 893, 85 L.Ed. 1231 (1941). The Committee Reports accompanying the 1942 Act observed of the expanded statute that, except for the trade or business requirement, a deduction under the new § 23(a) (2) was subject to all limitations theretofore applicable with respect to an expense paid or incurred in carrying on any trade or business. H.R. No. 2333, 77th Cong., 2d Sess., p. 75, 1942-2 C.B. 372, 430; S.R. No. 1631, 77th Cong., 2d Sess., p. 88, 1942-2 C.B. 504, 571. The effect of the addition to the statute, therefore, was to eliminate the trade or business requirement for a deduction which otherwise might be available to an individual. That the addition "did not enlarge the range of allowable deductions of 'business' expenses" (footnote omitted) is apparent from McDonald v. Commissioner, 323 U.S. 57, 62, 65 S.Ct. 96, 98, 89 L.Ed. 68 (1944) [opinion of Mr. Justice Frankfurter]; Trust of Bingham v. Commissioner, supra, pp. 373-74 of 325 U.S., 65 S.Ct. 1232; and United States v. Gilmore, 372 U.S. 39, 44-45, 83 S.Ct. 623, 9 L.Ed.2d 570 (1963). See Whipple v. Commissioner, 373 U.S. 193, 200, 83 S.Ct. 118, 10 L.Ed.2d 288 (1963). See, also, Davis v. Commissioner, 151 F.2d 441, 443 (8 Cir. 1945), cert. denied 327 U.S. 783, 66 S.Ct. 682, 90 L.Ed. 1010, and Spangler v. Commissioner, 323 F.2d 913, 918 (9 Cir. 1963). Indeed, Bingham and Gilmore describe §§ 23(a) (1) and (2) [and, hence, §§ 162(a) and 212] as *in pari materia*. As a consequence, we cannot accept the argument, if one is made here, that the criteria for determining deductibility under § 162(a) are different from those for determining deductibility under § 212, except, of course, the trade or business aspect of § 162(a) and the income aspect of § 212.

6. Although the title cases regard litigation expenses in connection therewith as capital expenditures, there are other cases which allow legal fees and expenses as deductions. Examples are Kornhauser v. United States, 276 U.S. 145, 48 S.Ct. 219, 72 L.Ed. 505 (1928); United States v. Pate, 254 F.2d 480 (10 Cir. 1958); and Ticket Office Equipment Co., 20 T.C. 272, 280 (1953), aff'd on another issue, Ticket Office Equipment Co. v. Commissioner, 213 F.2d 318 (2 Cir.). One might suspect offhand that these two lines of authority in some degree are inconsistent. See Towanda Textiles, Inc. v. United States, 180 F.Supp. 373, 378 (Ct.Cls. 1960). The inconsistency, if it exists at all, may, however, not possess real depth or significance. Many of the opinions recognize and refer to both lines of cases. Some of the non-title cases seek only monetary damages or concern only cash. We venture to repeat the Supreme Court's statement, noted above, that there is no "ready touchstone" for every conceivable and variable fact situation and to note that our comments in Industrial Aggregate Co. v. United States, supra, p. 645 of 284 F.2d, namely, that "Practicality and substance are to be recognized" and that "The test which appears to have been established is that of *primary purpose*", may have proper pertinency in most situations.

The Commissioner relies primarily upon two cases. The first is this court's decision in Helvering v. Stormfeltz, 142 F.2d 982 (8 Cir. 1944). There a minor, upon attaining his majority, sought recovery from his estate guardian of funds allegedly embezzled. He was successful. His attorneys received a contingent fee for their services. The ward asserted this fee and attendant legal expenses as deductions under § 23(a) (2) of the 1939 Code. This court held, 142 F.2d, p. 984, that, to the extent the recovery consisted of interest, it was income and the expense of its collection was deductible

but that, to the extent the recovery was of capital, the collection expense was not deductible. "The expenses here are analogous to expenditures incurred for the purpose of protecting title to property. It has been held that under this amendment such expenses are not deductible because they are capital expenditures". The Iowa court in the Bechtel litigation characterized a corporation's officers and directors as "trustees or quasi trustees for the corporation and its stockholders" and observed that they "occupy a fiduciary relation to the Corporation". Pp. 215–16 and 225 of 51 N.W. 2d. On this analysis Stormfeltz is precedent for the present case in the Commissioner's favor.

The Commissioner's second primary case is Pennroad Corp., 21 T.C. 1087 (1954), affirmed, C. I. R. v. Pennroad, 228 F.2d 329 (3 Cir.). There shareholders' derivative suits were settled after extensive litigation for $15,000,000 in cash. Substantial legal fees and expenses were awarded from the amount so recovered. The Tax Court held, 21 T.C. pp. 1098–1099, that the settlement sum was a recovery of capital resulting in no taxable income and that fees and expenses paid to the corporation's separate counsel were not deductible under § 23(a) (1) (A) of the 1939 Code because "It is well settled that expenses of acquiring, perfecting, or recovering title to property are non-deductible capital expenses". Stormfeltz was cited in support of this conclusion. The decision was one reviewed by the full court. The appeal to the Third Circuit did not concern the issue as to the deductibility of the fees and expenses.

The taxpayer's response to Stormfeltz is that it concerned § 23(a) (2), rather than § 23(a) (1); that it was decided before Bingham came down in 1945; and that Stormfeltz would have gone the other way had it postdated Bingham. Its response to Pennroad is that the decision is just plain wrong; that the issue there was a minor one, as compared with amounts otherwise involved, and was not appealed; and that it was based on Stormfeltz and on a Tax Court case later reversed by the Ninth Circuit.

The taxpayer, further, places reliance on the case of California & Hawaiian Sugar Ref. Corp. v. United States, 311 F.2d 235 (Ct.Cls. 1962). There it was held by a divided court that legal expenses incurred in recovering unconstitutionally imposed processing and floor stock taxes were deductible. The majority refused to accept the proposition that legal expenditures must always be non-deductible where "capital" is involved; drew a distinction between gaining a tax refund and recovering non-monetary property having a basis which can be adjusted; distinguished Pennroad because "it involved the question of what was the proper amount * * * to pay for the capital assets" and was a decision which was "simply one of many refusing deductions from ordinary income for expenditures made to realize capital gains, or minimize possible capital losses"; cited Stormfeltz; and, while apparently not critical of our actual holding there, observed that if this court's general reference to "capital expenditures" was "intended as applicable to all returns of capital, it was dictum at best, and in our view far too broad". Footnote 12, pp. 243–244 of 311 F.2d.

We need not be much concerned here with the question whether California & Hawaiian is sound insofar as the court drew a distinction between recovery of taxes and one of non-cash properties, for the present taxpayer's recovery, although in money, related to non-cash assets possessing a basis. As to these the Court of Claims seemed to recognize the usual rules. Note the later unanimous opinion of the same court in Manufacturers Hanover Trust Co. v. United States, Ct. Cl., 312 F.2d 785 (1963), cert. denied 375 U.S. 880, 84 S.Ct. 150, 11 L.Ed.2d 111. See the Ninth Circuit's critical comments in Spangler v. Commissioner, supra, p. 920 of 323 F.2d, as to any claimed distinction in the cash recovery situation.

From the facts, from the observations we have made, and from the decided

cases, certain factors emerge and impress us:

1. The state court action had to do with the excess of the purchase prices paid by the taxpayer for assets transferred to it. The purchase prices, incontrovertibly, are capital in character. The state litigation therefore concerned capital items.

2. What was desired in the state action was an adjustment in the prices. On this issue it was not, basically, a suit for damages. Although it sought a monetary return and resulted in cash being collected, this, realistically, could only operate as and be a reduction of the prices charged to the taxpayer. We start with capital and we conclude with an adjustment in that capital. Thus, the fees and expenses incurred related directly to capital.

3. The transferred assets were noncash in character and were basis possessing properties.

4. The cash collections could logically be expected to have pertinency in the adjustment of basis.

5. The argument made by the taxpayer that, although the record does not disclose it, it has not had the interim benefit of oversized depreciation allowances and abandonment losses occasioned by the excess acquisition costs, seems to us to involve different issues and different taxable years which were not before the Tax Court and are not before us now.

6. This taxpayer was not itself an active participant in the recovery. Instead, although by its pleadings it alleged laches and the statute of limitations, pp. 180 and 218 of 51 N.W.2d, it adopted a neutral and largely non-participating posture.

7. The Tax Court's determination here is primarily factual in nature.

8. The Supreme Court tells us that "it is the origin of the liability" and "the kind of transaction out of which the obligation arose and its normalcy in the particular business which are crucial and controlling". Deputy v. Du Pont, 308 U.S. 488, 494, 496, 60 S.Ct. 363, 366, 367, 84 L.Ed. 416 (1940); United States v. Gilmore, supra, pp. 47–48 of 372 U.S., 82 S.Ct. 623. Here that origin is capital.

■■■ These factors in the aggregate, it seems to us, clearly bring this case down on the side of non-deductibility. This conclusion appears to us to be consistent with established and accepted general rules and does no violence to those rules or, for that matter, to any concept of fairness in income taxation. We regard Spangler v. Commissioner, supra, and Munson v. McGinnes, 283 F.2d 333 (3 Cir. 1960), cert. denied 364 U.S. 880, 81 S.Ct. 171, 5 L.Ed.2d 103, as particularly significant authority. In the former the Ninth Circuit said, p. 920 of 323 F.2d:

"Since perfection of taxpayer's claim to ownership was the essence of the suit, the costs of the litigation were capital expenditures and, under the authorities cited, were not expenses deductible from ordinary income."

In the latter, the Third Circuit said, p. 336 of 283 F.2d:

"Each expense which must be capitalized presents the simple economic reality of a particular cost of a particular capital transaction."

■■■ We find no substance in the taxpayer's alternative argument that merely because an amount paid is in discharge of a judgment against it for fees and expenses, it is deductible as a business expense.

Affirmed.