Fred **W. WOODWARD** and Elsie **M.** Woodward, **F. R.** Woodward and **M.** Jeanne Woodward, Petitioners,

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

No. 19386.

United States Court of Appeals Eighth Circuit.

May 2, 1969.

Donald P. Cooney, Dubuque, Iowa, for petitioners.

Issie L. Jenkins, Atty., Dept. of Justice, Washington, D. C., for respondent; Mitchell Rogovin, Asst. Atty. Gen., and Lee A. Jackson and Harry Baum, Attys., Dept. of Justice, Washington, D. C., with her on the brief.

Before MATTHES, MEHAFFY and LAY, Circuit Judges.

MATTHES, Circuit Judge.

This case is before us on petition to review the decision of the Tax Court sustaining the determination by the Commissioner of Internal Revenue of deficiencies in the petitioners' income taxes for the year 1963. 49 T.C. 377 (1968) (opinion by Judge Tietjens reviewed by the entire court, with Judges Bruce and Fay dissenting).

The deficiencies result from deductions of litigation expenses incurred in connection with the acquisition of shares of stock by the petitioners. The petitioners contend that these expenses were incurred for the conservation, management or maintenance of property held for the production of income and thus deductible under § 212 of the Internal Revenue Code of 1954 which provides:

"In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year—

(1) for the production or collection of income;

(2) for the management, conservation, or maintenance of property held for the production of income; * * *."

The Commissioner, on the other hand, maintains that the expenses were capital expenditures under § 263 of the 1954 Code which must be added to the basis of the property rather than deducted from gross income. Section 263 provides:

"No deduction shall be allowed for—

(1) Any amount paid out for new buildings or for permanent improvements or betterments made to increase the value of any property or estate. This paragraph shall not apply to—[exceptions, irrelevant to this case, omitted]

(2) Any amount expended in restoring property or in making good the exhaustion thereof for which an allowance is or has been made. * * *"

Together the petitioners owned a majority interest in the Telegraph Herald, an Iowa corporation. The charter of the corporation was due to expire in 1961. The stockholders met on June 9, 1960, and by majority vote adopted a resolution extending the corporate existence of Telegraph Herald perpetually. A certificate for the renewal of the corporate charter was issued by the Secretary of the State of Iowa shortly thereafter.

The only shareholder voting against renewal was Margaret M. Quigley, who owned 379 of the 1,200 shares issued and outstanding. Under the corporation laws of Iowa it was provided that:

"In all cases of renewal, those stockholders voting for such renewal must

purchase at its real value the stock voted against such renewal, and shall have three years from the date such action for renewal was taken in which to purchase and pay for the stock voting against such renewal, which purchase price shall bear interest at the rate of five percent per annum from the date of such renewal action until paid." Iowa Code § 491.25 (1958).

On February 9, 1962, all the majority stockholders, except one, joined in filing a petition in the District Court of Iowa, Dubuque County, seeking a determination of the real value of the Quigley stock. The value was determined by the district court to be $1,750 per share. This figure was lowered by the Supreme Court of Iowa to $1,650 per share. Woodward v. Quigley, 257 Iowa 1077, 133 N.W.2d 38 (1965). On rehearing the value was further reduced to $1,620. Woodward v. Quigley, 257 Iowa 1077, 1104, 136 N.W.2d 280 (1965). After the entry of final judgment in the case, the majority stockholders, on July 16, 1965, purchased the stock.

During 1963 petitioners paid attorneys', accountants' and appraisers' fees along with other costs of services rendered in connection with the determination of the value of Mrs. Quigley's stock. The respective taxpayers deducted their proportionate shares of these expenses on their income tax returns for 1963, describing them as "professional fees incurred in relation to income-producing property." The Commissioner disallowed the deductions "because the fees represent capital expenditures incurred in connection with the acquisition of capital stock of a corporation." The taxpayers timely filed petitions in the Tax Court for a redetermination of the deficiencies. As stated, the Tax Court upheld the Commissioner's action.

It has long been the government's view that the cost of defending or perfecting title to property is a capital expenditure. 26 C.F.R. § 1.263(a)—2(c) (1968).[1] The courts have accepted this view, 4A Mertens, Law of Fed. Income Taxation §§ 25.24, 25A.16 (1966), but have added the restriction that not all expenses of litigation wherein title is involved are capital expenditures. If litigation arises concerning the title to property held by the taxpayer, the courts will look to the primary purpose of the litigation to determine the deductibility of litigation expenses.

"Thus, if the primary or sole purpose of the suit is to perfect or defend title, the expenditures are not deductible. * * * On the other hand, even though title may be involved, if its defense or perfection is not the primary purpose of the litigation, the expenditures do not encounter the barrier of the regulation's standard and they may qualify instead as ordinary and necessary expenses." Industrial Aggregate Co. v. United States, 284 F.2d 639, 645 (8th Cir. 1960) (citations omitted).

In the latter instance the expenses are currently deductible from gross income under § 162 or § 212 of the Internal Revenue Code of 1954 (formerly § 23(a) (1) and § 23(a) (2), respectively, of the Internal Revenue Code of 1939.[2]

1. 26 C.F.R. § 1.263(a)—(2) provides:
   "The following paragraphs of this section include examples of capital expenditures:
   *      *      *      *      *
   "(c) The cost of defending or perfecting title to property."

2. Section 162, as amended, provides:
   "Trade or business expenses—
   (a) In general. There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—
   (1) a reasonable allowance for salaries or other compensation for personal services actually rendered;
   (2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business; and
   (3) rentals or other payments required to be made as a condition to the con-

Petitioners would extend the primary purpose test to litigation expenses incurred in the *acquisition* of property. They take the position that since the purpose of the litigation below was merely to value shares which the taxpayers were required by law to purchase—rather than to perfect, defend or acquire title— the expenditures were incurred for the management, conservation or maintenance of property held for the production of income, and thus deductible under § 212.

The Commissioner argues, and the Tax Court held, that the primary purpose doctrine has no application to litigation expenses directly connected with the acquisition of a capital asset. According to this view, that doctrine becomes operative only when, having acquired property, a taxpayer incurs expenditures to defend or perfect title thereto. Accepting this view of the matter, the Tax Court found that the "value-setting litigation and its attendant expenses were directly tied to the stock purchase and the expenses were part of the cost of the stock. As such, the expenses were clearly capital expenditures," under § 263 of the 1954 Code. 49 T.C. at 382.

■ Petitioners' reliance on the primary purpose test is misplaced. As we have mentioned, that test developed from the uncertainty surrounding the effect of Treas.Reg. 1.263(a)—2(c), which gives as an example of a capital expenditure "the cost of defending or perfecting title to property." Rather, this case involves the cost of *acquisition* of property. We thus have no need to apply the primary purpose test, a test which would only be relevant to a situation where the taxpayer's ownership of or interest in a capital asset is challenged. This was the situation in Industrial Aggregate Co. v. United States, *supra*, where litigation expenses were incurred in connection with a dispute concerning leases which taxpayer had held for many years. In

that case we applied the primary purpose test to find the litigation expenses deductible.

The test was also recognized in Iowa Southern Util. Co. v. Commissioner of Internal Revenue, 333 F.2d 382 (8th Cir.), cert. denied, 379 U.S. 946, 85 S. Ct. 438, 13 L.Ed.2d 543 (1964). There, shareholders of the taxpayer corporation brought a derivative action against the corporation's majority shareholders and former president and others, on the theory that they had secretly acquired properties at prices far less than those at which they turned them in to the taxpayer (corporation). The corporation was not allowed to deduct the litigation expenses as ordinary and necessary business expenses under § 162. While we recognized the primary purpose test in that opinion, we did not apply the test to the facts of that case. Instead, Judge Blackmun, in reaching the decision that the litigation expenses represented capital expenditures, relied on several factors to be discussed later. Apparently the court treated the expenses as incidental to the earlier purchase of the capital assets. See Spangler v. Commissioner of Internal Revenue, 323 F.2d 913, 921 (9th Cir. 1963) and Munson v. McGinnes, 283 F.2d 333 (3d Cir.), cert. denied, 364 U.S. 880, 81 S.Ct. 171, 5 L.Ed.2d 103 (1960).

Petitioners also suggest that they obtained equitable title to the stock on the date the shareholders voted against corporate renewal. They argue the purchase was subject only to valuation and payment of the purchase price. Based upon this premise, it is asserted that the expenses were not incurred to perfect title or to purchase and thus were not capital expenditures.

■ Iowa law does not support the taxpayers' premise. The only Iowa cases cited by petitioners are Woodward v. Quigley, *supra;* Robbins v. Beatty, 246 Iowa 80, 67 N.W.2d 12 (1954); State

tinued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is

not taking title or in which he has no equity. * * * "

ex rel. Robbins v. Shellsburg Grain and Lumber Co., 243 Iowa 734, 53 N.W.2d 143 (1952); Melsha v. Tribune Publishing Co., 243 Iowa 350, 51 N.W.2d 425 (1952); and Terrell v. Ringgold County Mut. Tel. Co., 225 Iowa 994, 282 N.W. 702 (1938). Even Judge Bruce in his dissent was unable to read into the above cases the rule espoused by the Petitioners. He stated:

> "There is nothing in the statute or in the decisions of the Iowa courts, which would have prevented the dissenting stockholder, if she had not been satisfied with the value found by the court, from withdrawing her objection to the renewal and retaining her stock. Thus, a sale of the stock might not have taken place." 49 T.C. 377, 386 at n. 2 (1968).

Assuming arguendo the validity of petitioners' premise, however, the conclusion they reach does not follow. There are several cases concerning litigation expenses incurred by the holder of equitable title of property to *perfect* his legal title. See Spangler v. Commissioner of Internal Revenue, *supra* at 920, notes 16, 17. The authorities differ on whether these costs are deductible expenses or capital expenditures. *Contrast* Allen v. Selig, 200 F.2d 487 (5th Cir. 1952) (expenses deductible under predecessor to § 212) *with* Garrett v. Crenshaw, 196 F. 2d 185 (4th Cir. 1952) (capital expenditures). We need not choose one of these divergent views because those cases did not concern the *acquisition* of property. Rather, the taxpayers were seeking to obtain legal recognition of their title. This purpose was not connected with the original acquisition of the property. What we have here, however, is litigation directly connected with the purchase of property. The expenses were incurred to establish the value of the capital assets acquired and were much like brokerage fees. They were part of the cost of ac-

quisition. Davis v. Commissioner of Internal Revenue, 151 F.2d 441 (8th Cir. 1945), cert. denied, 327 U.S. 783, 66 S. Ct. 682, 90 L.Ed. 1010 (1946). And *see* Johnson & Co. v. United States, 149 F.2d 851 (2d Cir. 1945).

This case may best be viewed against the historical background of the provision under which the deduction is claimed. Prior to the 1942 amendments to the Internal Revenue Code of 1939, expenses incurred for the production of income which could not meet the strict standards of "business" expenses were not deductible from gross income. Higgins v. Commissioner of Internal Revenue, 312 U.S. 212, 61 S.Ct. 475, 85 L.Ed. 783 (1941); 4A Mertens § 25A.01 (1966). To remedy this situation Congress enacted § 23(a) (2) of the Code.[3] Section 212 of the Internal Revenue Code of 1954, set forth above, adopted the essential provisions of § 23(a) (2) (with additions not pertinent here).

After the passage of § 23(a) (2) there was debate over what types of expenditures were deductible under the provision. 4A Mertens § 25A.14, n. 55. *See* Nahstoll, Non-Trade and Non-Business Expense Deductions, 46 Mich.L.Rev. 1015, 1026 (1948). There was a feeling, which still prevails among some commentators, that the broad definition of a capital expenditure as distinguished from a business expense under § 23(a) (1), the predecessor to § 162 of the 1954 Code, was inapplicable to expenses deductible under § 23(a) (2). Brookes, Litigation Expenses and the Income Tax, 12 Tax L. Rev. 241, 251–63 (1957); McDonald, Deduction of Attorneys' Fees for Federal Income Tax Purposes, 103 U.Pa.L.Rev. 168, 184–89 (1954); Comment, Federal Income Tax Treatment of Attorneys' Fees, 40 Tex.L.Rev. 137, 146 (1961). However, it was determined that the two provisions were *in pari materia*. Trust of Bingham v. Commissioner of Internal

---

3. This provision allowed deductions for, "[I]n the case of an individual, all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income."

Revenue, 325 U.S. 365, 373, 65 S.Ct. 1232, 89 L.Ed. 1670 (1945); Iowa Southern, *supra* at 386; Munson v. McGinnes, *supra* at 336; see McDonald v. Commissioner of Internal Revenue, 323 U.S. 57, 62, 65 S.Ct. 96, 89 L.Ed. 68 (1944) and the rule evolved that expenses deductible under § 212 are subject to the same limitations as § 162 expenses except for the "non-business" aspect of the former. Trust of Bingham, *supra* at 374–375; McDonald v. Commissioner of Internal Revenue, *supra* at 62; Lucas v. Commissioner of Internal Revenue, 388 F.2d 472, 474 (1st Cir. 1967); Iowa Southern, *supra* at 386; Spangler v. Commissioner of Internal Revenue, *supra* at 918; 4A Mertens § 25A.04. In particular, capital expenditures are not deductible under § 212, just as they are not deductible under § 162. Lucas v. Commissioner of Internal Revenue, *supra* at 474; Spangler v. Commissioner of Internal Revenue, *supra*, at 918–919; Munson v. McGinnes, *supra* at 335; 4A Mertens § 25A.14.[4]

■ Setting aside for the moment consideration of the capital aspects of this transaction, it is difficult to comprehend how these expenses were incurred "for the management, conservation, or maintenance of property held for the production of income." What is the property conserved? Petitioners suggest that it was their cash; that is to say, the less money the petitioners had to pay for the stock the more money they would "conserve." This contention is wholly without substance. Section 212 was not designed to allow tax deductions for the preservation of one's net worth. To come within the scope of § 212, the petitioners are forced to argue that through the valuation proceedings they were conserving either (1) the shares of stock they held as majority shareholders, or (2) the shares of stock they were required to purchase. In our view neither theory is sound. The first is not persuasive, because under Iowa law the charter of the corporation was renewed upon affirmative action of the majority. Their interest in the corporation and the value of the shares remained unaffected. The second theory is, as we have seen, unsupported by Iowa law. Neither the statute nor the cases indicate that the petitioners became the actual owners of the stock until the purchase was consummated by payment of the value determined by the Supreme Court of Iowa.

■ The general rule is that expenses incurred in acquiring or disposing of property are capital expenditures. See, e. g., Lucas v. Commissioner of Internal Revenue, *supra* at 474; Munson v. McGinnes, *supra* at 335; Jones' Estate v. Commissioner of Internal Revenue, 127 F.2d 231, 232 (5th Cir. 1942). See also 4A Mertens § 25A.15 and the cases there cited. The expenditures here fall within that category. They "related directly" to the acquisition of capital assets. Iowa Southern, *supra* at 388. The property would never have been acquired had not the value been established and paid. As was stated in Munson v. McGinnes, *supra* at 335, "if the problem is to reach mutually satisfactory or binding terms of sale * * * the question of capitalization must be faced." That is precisely the situation we have here. It is similar to that involved in Ward v. Commissioner of Internal Revenue, 224 F.2d 547 (9th Cir. 1955), where the seller was required to capitalize attorneys' expenses incurred in getting a higher price for the property sold. And see Johnson & Co. v. United States, *supra*, where litigation expenses incurred in valuing condemned property, the title to which had already passed to the purchaser, were held to be capital expenditures.

We regard our conclusion as consistent with the reasoning and result of our *Iowa Southern* decision, *supra*. There the state court action "had to do with the

---

4. The opinions in both *Iowa Southern*, *supra*, and Spangler v. Commissioner of Internal Revenue, *supra*, contain excellent discussions of the history and scope of § 212.

excess of the purchase prices paid by the taxpayer for assets transferred to it." *Id.* at 388. Here the state action concerned the amount to be paid for assets to be received. In *Iowa Southern* we recognized, "purchase prices, incontrovertibly, are capital in character. * * * What was desired in the state action was an adjustment in the prices," and thus, "the fees and expenses incurred related directly to capital." Here the state action also concerned the amount to be paid for the capital asset and was thus "related directly" to capital.

Again in *Iowa Southern* "the transferred assets were non-cash in character and were basis possessing properties." The same is true here. And the excess amounts received by the taxpayer in *Iowa Southern* "could logically be expected to have pertinency in the adjustment of basis." Here the amount paid by the taxpayer has a logical pertinence to the adjustment of basis. In fact the amount paid, including acquisition expenses, is the basis.

Finally, we noted in *Iowa Southern* that it is the "origin of the liability" and "the kind of transaction out of which the obligation arose" that is crucial. While these phrases were originally spoken in another context, United States v. Gilmore, 372 U.S. 39, 47–48, 83 S.Ct. 623, 9 L.Ed.2d 570 (1963) and Deputy v. DuPont, 308 U.S. 488, 494, 496, 60 S.Ct. 363, 84 L.Ed. 416 (1940), we believe that the "kind of transaction" is important in the determination of whether an expense is currently deductible or must be capitalized. The transaction involved here was the purchase of capital assets. The valuation of those assets was vital to the purchase, and the litigation necessary for valuation was thus an integral part of the overall transaction.

Our attention is directed by the petitioners to several decisions involving problems similar to the one before us. It will be noted that some of these cases involve the seller's side of the transaction. While we do not express any opinion as to whether the outcome would

differ were the seller involved in this case, we do recognize a distinguishing characteristic in the seller's position. Until the property is valued and the price is paid by the purchaser, the seller still owns the property. There is not the conceptual difficulty with the phrase, "property *held* for the production of income," that is present here.

The first case relied upon by the taxpayers is Heller v. Commissioner of Internal Revenue, 2 T.C. 371 (1943), aff'd, 147 F.2d 376 (9th Cir.), cert. denied, 325 U.S. 868, 65 S.Ct. 1405, 89 L.Ed. 1987 (1945). There the taxpayer, a dissenting shareholder, demanded the cash value of his shares rather than the stock of another corporation in a corporate acquisition. He instituted litigation pursuant to the California corporation laws for appraisal of the stock. The litigation expenses were held deductible by the seller under § 212 because they bore a reasonable and proximate relation to the production or collection of income and to the management of property held for that purpose.

In addition to involving the seller's side of the transaction, the *Heller* case was decided the year after the predecessor to § 212 was enacted and at a time when its scope was in doubt. Furthermore, the courts in reviewing the Tax Court's decision were bound by the then-prevailing rule of Dobson v. Commissioner of Internal Revenue, 320 U.S. 489, 64 S.Ct. 239, 88 L.Ed. 248 (1943). Allied Chem. Corp. v. United States, 305 F.2d 433, n. 3 at 443, 158 Ct.Cl. 267 (1962) (dissenting opinion). We also note that *Heller* has been impliedly criticized by the Ninth Circuit, Spangler v. Commissioner of Internal Revenue, *supra* at 919–920 n. 15, and that the Commissioner in his brief suggests that it "runs counter to the mainstream of relevant decisions in this area."

The case of Naylor v. Commissioner of Internal Revenue, 203 F.2d 346 (5th Cir. 1953), while not involving a corporate reorganization or renewal, presents a problem analogous to the one at hand. There the taxpayer gave an option to

**320**

buy shares which he held, with the price based on the net asset value of the company at a certain date. The purchaser exercised the option to purchase the shares, but a dispute arose over the valuation. The taxpayer hired an attorney to negotiate with the purchaser concerning the value of the shares. The expenses incurred in connection with the valuation were held to be deductible under what is now § 212.

Again we note that the taxpayer was the seller in the *Naylor* case. Furthermore, that case involved a completed sale of shares by which both parties were bound. And the court treated the problem as one of the collection of income under § 212, not as one involving property held for the production of income. See Allied Chem. Corp. v. United States, *supra* at 443 n. 3 (dissenting opinion). Moreover, it is significant that this case was also impliedly criticized in Spangler v. Commissioner of Internal Revenue, *supra* at 919–920 n. 15. See Commissioner of Internal Revenue v. Doering, 335 F.2d 738, 741, 743 (2d Cir. 1964); 4A Mertens § 25A.16 n. 69.

There are two recent federal district court cases with similar fact situations which appear to support the taxpayers' viewpoint. In Smith Hotel Enterprises v. Nelson, 236 F.Supp. 303 (E.D. Wisc. 1964), the majority of the stockholders of the corporate taxpayer agreed to sell the corporation's assets. The dissenting shareholders demanded the fair value of their stock as provided for by statute. Since no agreement on valuation of the shares could be reached, the minority shareholders petitioned for a determination of value by the court. Litigation expenses in connection with the valuation proceeding were held deductible under § 162 as business expenses. In Hilton Hotels v. United States, 285 F. Supp. 617 (N.D.Ill.1968), aff'd 410 F.2d 194 (7 Cir., 1969), the dissenting shareholders to a corporate merger had their shares valued in appraisal proceedings for purchase by the corporate taxpayer. The expenses of the purchasing corporation were held deductible under § 162

with the court placing heavy reliance on the *Smith Hotel* decision.

Both of these decisions found deductions under § 162, rather than under § 212, the provision involved here. The court in *Smith Hotel* applied the primary purpose test to reach its decision. For reasons previously given, we do not believe that test is applicable to our case. Moreover, the statute involved in *Hilton* specifically provided that upon objection to merger by a stockholder, his shares were deemed to have been acquired by the corporation. As we have seen, there is no such provision in the Iowa statutes regarding corporate renewal.

The better view regarding the tax consequences of the litigation expenses in these cases is expressed by the court in Boulder Bldg. Corp. v. United States, 125 F.Supp. 512 (W.D.Okla.1954), on facts essentially identical to the facts in this case. In *Boulder*, minority shareholders of the taxpayer corporation objected unsuccessfully to renewal of the corporation's charter. They demanded that the corporation purchase their shares at a fair value in accordance with a statutory provision. Disagreement over the value of the stock ensued, and the shareholders filed a suit for a declaration of the value. Expenses incurred by the corporation incident to these proceedings were sought to be deducted as business expenses under the predecessor to § 162 of the present Code. The court rejected this contention and found the expenses to be capital expenditures because they were incurred "in connection with the acquisition of stock." *Id.* at 515–516.

■ In summary, the transaction involved the purchase of capital assets. The valuation of those assets was vital to the purchase, and the litigation necessary for valuation was thus inextricably woven into the fabric of the overall transaction. Petitioners have the burden of clearly showing their right to the claimed deduction. Interstate Transit Lines v. Commissioner of Internal Revenue, 319 U.S. 590, 593, 63 S.Ct. 1279, 87

L.Ed. 1607 (1943); *Iowa Southern, supra* at 385. They failed to discharge that burden.

The decision of the Tax Court is affirmed.