MICHAEL HARDEN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Harden v. Commissioner
Docket No. 11038-89
United States Tax Court
T.C. Memo 1991-454; 1991 Tax Ct. Memo LEXIS 503; 62 T.C.M. (CCH) 756; T.C.M. (RIA) 91454; September 18, 1991, Filed *503 Decision will be entered under Rule 155. Howard J. Glicksman, for the petitioner. Robert A. Varra, for the respondent. SCOTT, Judge. SCOTT MEMORANDUM OPINION Respondent determined deficiencies in petitioner's Federal income tax and additions to tax for the calendar years 1984 and 1985 in the following amounts: Additions to Tax
Sec. Sec. Sec.
Sec. Year
Deficiency
6653(a)(1) [1]
6653(a)(2)
6651(a)(1)
6661 1984
$ 13,229
$ 1,072
50% of interest
$ 2,021
$ 3,307
due on $ 2,245
1985
$ 17,860
$   893
50% of interest
--
$ 4,465
due on $ 16,408
Some of the issues raised by the pleadings have been disposed of by agreement of the parties, leaving for decision whether an amount of $ 25,000 paid by petitioner in 1984 to a person who had filed a complaint against *504 him with the police department in return for her agreement to drop the complaint and keep the matter confidential is deductible as a professional development expense. All of the facts have been stipulated and are found accordingly. Petitioner, who resided in Aurora, Colorado, at the time he filed his petition in this case, filed Federal income tax returns for the calendar years 1984 and 1985 with the Internal Revenue Service, Ogden, Utah. During 1984 petitioner was employed full time by the Denver Broncos Football Club (the Club) as a professional football player. He was a starting defensive back and one of the co-captains for the Club. During 1984 petitioner and the Club began negotiating new terms and extensions of petitioner's employment contract. Petitioner had a personal relationship with Ms. Michelle Moore prior to and during 1984. In late August or early September 1984, petitioner and Ms. Moore had an argument. A few days after the argument, petitioner went to Ms. Moore's home to attempt to make amends, but he was unsuccessful. The day after his visit to Ms. Moore's home, petitioner was informed by the Club and the Denver Police Department that Ms. Moore had filed *505 a criminal complaint against him for sexual assault. The complaint alleged that the sexual assault had occurred during petitioner's visit to Ms. Moore's home. At the time the complaint was filed petitioner was involved in contract negotiations with the Club. After learning of the criminal complaint, the Club informed petitioner that, if the matter became public knowledge, he would not be retained as an employee of the Club and they would terminate his services through either a trade or release. Petitioner authorized his counsel to contact Ms. Moore's counsel and effectuate a monetary settlement in consideration of Ms. Moore's not pursuing the criminal complaint. On September 6, 1984, after petitioner reached a verbal settlement with Ms. Moore, petitioner and the Club executed provisions of petitioner's employment contract for the period February 1, 1984, through February 1, 1989. On September 17, 1984, petitioner and Ms. Moore executed a settlement in which petitioner paid Ms. Moore $ 25,000 in exchange for her withdrawing her criminal complaint and keeping the matter confidential. The settlement agreement recited that disputes had arisen between petitioner and Ms. Moore, that *506 Ms. Moore had claimed through her attorney an assault on her person by petitioner, that prosecution of this claim in either a civil or criminal form would result in irreparable damage to petitioner's image and reputation and directly affect his continued employment, and that the parties desired to amicably resolve their disputes. Based on these recitals, Ms. Moore acknowledged that she was aware that prosecution of the causes of action would do irreparable harm to petitioner's reputation as a professional football player and directly threaten his continued employment, and petitioner agreed that in order to protect his professional reputation and continued employment he would pay Ms. Moore $ 25,000 for alleged damages for personal injuries. Ms. Moore, in consideration for the payment, agreed to take any and all necessary steps to cease any criminal investigation which she commenced by filing a complaint with the Denver Police Department and to advise the District Attorney's office of her desire not to prosecute the suit. The agreement contained mutual releases and Ms. Moore's agreement to keep all the circumstances giving rise to the agreement confidential. Petitioner deducted *507 the $ 25,000 paid to Ms. Moore on his 1984 Federal income tax return as a professional development expense. Respondent disallowed the claimed deduction because it had not been adequately substantiated as to amount or deductibility. To be deductible pursuant to section 162(a), an expense must be ordinary, necessary, and paid in carrying on a taxpayer's trade or business. No deduction is allowed for personal, living, or family expenses. Sec. 262. To be deductible pursuant to section 212(1), an expense must be ordinary, necessary, and paid for the production or collection of income. The criteria for determining deductibility pursuant to section 212(1) are generally the same as for section 162(a), except for the trade or business requirement. Iowa Southern Utilities Co. v. Commissioner, 333 F.2d 382, 385-386 (8th Cir. 1964); Rodney v. Commissioner, 53 T.C. 287, 320 (1969). To be considered an expense of carrying on a taxpayer's trade or business, the expense involved must be one that has a business origin. What must be determined is the -- origin and character of the claim with respect to which an expense was incurred, rather than its *508 potential consequences upon the fortunes of the taxpayer * * *
United States v. Gilmore, 372 U.S. 39, 49, 9 L. Ed. 2d 570, 83 S. Ct. 623 (1963). The Supreme Court also noted that characterization of the expense "does not depend on the consequences that might result to a taxpayer's income-producing property from a failure to defeat the claim." United States v. Gilmore, supra at 48. Petitioner argues that his primary motivation in making the payment to Ms. Moore was to protect his professional and public reputation and that the origin of the expense was the threat by the Club that he would not be retained in his employment. In support of his argument, petitioner contends that the payment was made, not because Ms. Moore had filed a criminal complaint, but because the Club threatened to terminate his employment if criminal charges were filed. He concludes that, but for the threat by the Club, he would not have made the payment to Ms. Moore. Respondent argues that the origin of the payment was the personal relationship between Ms. Moore and petitioner and the subsequently filed complaint. He concludes that the payment was not paid in carrying on petitioner's trade *509 or business. Petitioner confuses the origin of the complaint with its consequences. The reason for the payment to Ms. Moore and the origin of the criminal complaint are two separate concepts, with only the latter being relevant to the disposition of this case. The threat of the Club to terminate petitioner's employment was a consequence that may have affected his income-producing activities, but the potential criminal charges and the criminal complaint arose from a personal relationship of petitioner. Accordingly, the origin of the expense was his personal relationship with Ms. Moore and her subsequent filing of the criminal complaint. Based on these facts, we find that the expense was not paid in carrying on his trade or business. This finding is supported by and analogous to United States v. Gilmore, supra, where the issue before the Supreme Court was the deductibility of a husband's legal expenses in a divorce proceeding. The expenses were attributable to resistance of his wife's claim to certain assets asserted by her to be community property. In the proceedings she claimed that the retained earnings of three corporations which operated under franchises *510 were community property which, if proved, might give her control of the corporations, and she also charged her husband with marital infidelity which, if proved, might cause cancellation of the dealer franchises from which he received the majority of his income. In finding that the expenses were not deductible, the Supreme Court rejected a test that looked to the consequences of the litigation, the loss of income-producing property. It did not consider the taxpayer's motives or purposes in undertaking defense of the litigation, but rather examined the origin and character of the claim against the taxpayer. It concluded that the claim arose out of the personal relationship of marriage. Similarly, under the facts before the Court, the threat of loss of income-producing employment with the Club might have been a consequence of Ms. Moore's charges against petitioner becoming public. Petitioner's motives for eliminating the possibility of the threat are not relevant. Rather, the origin and character of the complaint against petitioner is dispositive. Petitioner argues that the holding of Jenkins v. Commissioner, T.C. Memo 1983-667, supports his contention. His *511 reliance on that case is misplaced. In that case the issue before this Court was whether a payment on behalf of a corporation was a capital contribution or was an expense of the taxpayer's business. Since we agree with respondent's disallowance of the claimed $ 25,000 deduction on the basis that it was a personal expense and not a business expense or an expense for production of income, we need not consider respondent's other arguments in support of his disallowance of the claimed deduction. Decision will be entered under Rule 155. Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code as amended and in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩