Gunther J. Shirley and Helen A. Shirley, et al. [1] v. Commissioner. Shirley v. Commissioner
Docket Nos. 2645-68, 2653-68 - 2658-68.
United States Tax Court
T.C. Memo 1970-317; 1970 Tax Ct. Memo LEXIS 44; 29 T.C.M. (CCH) 1450; T.C.M. (RIA) 70317; November 17, 1970, Filed John G. Gemmill, Suite 1400,900 Wilshire Blvd., Los Angeles, Calif., for the petitioners. Marion Malone, for the respondent. SCOTT Memorandum Findings of Fact and Opinion SCOTT, Judge: Respondent determined deficiencies in petitioners' Federal income taxes for the calendar year 1963 in the following amounts: Docket No.
Petitioner
Deficiency
2645-68
Gunther J. Shirley and Helen A. Shirley
$11,023.71
2653-68
William E. Cornell and Louise S. CORNELL
1,446.45
2654-68
Mary D. Gould
2,924.98
2655-68
Loeta Spray
2,467.74
2656-68
Charles P. Gould
2,873.09
2657-68
Joseph A. Spray
2,467.74
2658-68
J. P. Shirley and Jacqueline C. Shirley
6,043.24
*45 The sole issue for decision is whether an amount paid by each petitioner in 1963 1451 in settlement of several law suits and for legal expenses incident thereto should be treated as capital losses or be deductible under section 162, I.R.C. 1954, [2] as ordinary and necessary business expenses or under section 212 as ordinary and necessary expenses paid for the management, conservation or maintenance of incomeproducing property. Findings of Fact Some of the facts have been stipulated and are found accordingly. Petitioners Gunther J. Shirley and Helen A. Shirley (husband and wife), William E. c/ornell and Louise Shirley Cornell (husband and wife), Charles P. Gould and Mary D. Gould (husband and wife), Joseph A. Spray and Loeta Spray (husband and wife), and J. P. Shirley, Jr., and Jacqueline C. Shirley (husband and wife), were all residents of the county of Los Angeles, California at the time of the filing of their petitions in this case. Each couple except the Goulds and the Sprays filed a joint Federal income tax return for the calendar year 1963 with the district director of internal *46 revenue in Los Angeles, California. Charles P. Gould, Mary D. Gould, Joseph A. Spray and Loeta Spray each filed a separate Federal income tax return for the year 1963 with the district director of internal revenue at Los Angeles, California. *
All of petitioners were stockholders in Emprise, Inc. (hereinafter referred to as Emprise). Prior to its dissolution in 1959 Emprise was a California corporation which had been organized in 1954. All of the men with the exception of William E. Cornell have at sometime been officers or employees of Metropolitan Federal Savings and Loan Association of Los Angeles (hereinafter referred to as Metropolitan Federal), and thereafter its successor company, Metropolitan Savings and Loan Association (hereinafter referred to as Metropolitan State). Petitioners Joseph A. Spray and Charles P. Gould are now and for sometime prior to 1936 have been attorneys licensed to practice by the State of California and senior partners of the Los Angeleslaw firm of Spray, Gould, & Bowers. Spray *47 and Gould and their law firm were the attorneys for Metropolitan Federal from its inception in 1936 and for its successor, Metropolitan State until mid-1959. In addition, they were the attorneys for Sealand Investment Corporation (hereinafter referred to as Sealand) from 1935 until subsequent to the year here in issue and for Emprise from its inception until its dissolution. Sealand was incorporated under the laws of California on October 22, 1934, under the name of Woodruff Browning Corporation. The name was later changed to Geo. L. Browning & Company, and on May 11, 1937, was changed to Sealand Investment Corporation. On November 12, 1935, 200 shares of Sealand's stock was held by M. M. Browning. On that date sealand authorized and issued an additional 800 shares of stock. On November 18, 1935, the shareholders of Sealand were as follows: Name
Number of sharesheld
M. M. Browning
250
George L. Browning
250
R. A. Martin
125
J. H. Mitchell
125
Herman Gunther
125
J. P. Shirley, Sr 125
Total
1,000
George L. Browning, M. M. Browning, J. Stanley Mullins, R. A. Martin, J. H. Mitchell, Herman Gunther, J. P. Shirley, Sr., and Paul Grafe were the eight *48 directors of Sealand as of November 1935 and its officers as of that date were George L. Browning, President; J. H. Mitchell, vice president; and R. A. Martin, secretarytreasurer. Sealand began as early as November 1935 planning for the formation of Metropolitan Federal. As of February 12, 1937, J. P. Shirley, Sr., had acquired all of the Browning shares of Sealand stock. On January 2, 1940, he transferred these 500 shares to Gunther J. Shirley (hereinafter referred to as Gunther). Also on January 2, 1940, N.D. Vaughan acquired 250 shares of Sealand stock and R.A. Martin acquired an additional 125 shares so that as of January 2, 1940, the shareholders of Sealand were as follows: Shareholder
Number ofshares held
Gunther J. Shirley
500
N. D. Vaughan
250
R. A. Martin
250
Metropolitan Federal was chartered in 1936 by the Federal Home Loan Bank Board as a Federal Savings and Loan Association under the provisions of the Home Owners Loan Act of 1933. (Act of June 13, 1933, 48 Stat. 128, 12 U.S.C. Sec. 1461, et seq.) Metropolitan Federal had no 1452 capital stock and no shareholders. Its depositors were its members who had voting rights *49 in direct proportion to the amount of their deposits. J. P. Shirley, St., [3] J. P. Shirley, Jr., Joseph A. Spray, and R. A. Martin, [4] participated in the founding of Metropolitan Federal and composed four of its five original directors. R. A. Martin was an attorney and was the prime organizer of Metropolitan Federal, preparing all the documents. J. P. Shirley, Sr., came into Metropolitan Federal as a financial backer while N. D. Vaughan, a banker, came in to be president. The original officers of Metropolitan Federal were N. D. Vaughan, president; R. A. Martin, vice president; Gunther Shirley, secretary-treasurer; and Katherine E. Martin Powell (hereinafter referred to as Katherine), assistant secretary-treasurer. These four officers and one other person initially constituted the entire staff of Metropolitan Federal. J. P. Shirley, Sr., was a director and chairman of the board until his death in 1955. J. P. Shirley, Jr., and Joseph A. Spray were directors of Metropolitan Federal from its inception until 1954 and continued as directors of Metropolitan State. R. A. Martin was a director until his death in 1952. He was the vice president until 1946 when he became president replacing *50 N. D. Vaughan. He continued to be president until his death in 1952. Upon R. A. Martin's death, Charles E. Gould was elected to fill the vacancy on MetropolitanFederal's board of directors. Katherine was appointed administratrix of the estate of her father, R. A. Martin, and Spray, Gould & Bowers were the attorneys for the estate and for Katherine as administratrix. From February 12, 1937, until R. A. Martin's death in December 1952 the directors of Sealand were: J. P. Shirley, Sr., J. P. Shirley, Jr., Katherine, N. D. Vaughan, and R. A. Martin. During this same period Sealand's officers were: R. A. Martin, president; Gunther J. Shirley, vice president; and Katherine, secretary-treasurer. On December 2, 1949, Katherine acquired the 250 shares of stock of Sealand which had been owned by Vaughan. On August 4, 1952, the R. A. Martin shares were transferred to Katherine. From that time until 1963, 500 shares of Sealand stock were *51 held by Gunther and 500 shares were held by Katherine. This 1,000 shares constituted the entire outstanding stock of Sealand. On October 6, 1937, J. P. Shirley, Sr., N. D. Vaughan, and R. A. Martin entered into the following agreement: The undersigned, having associated themselves together in a business venture in the City of Los Angeles, State of California, agree as follows: This business was originally organized as a corporation under the name Geo. L. Browning & Co. but has been renamed and is now called Sealand Investment Corporation, and this agreement also covers such other business organization as may be now operating or may later be organized to carry out the letter and spirit of this agreement. The major assets and liabilities of the enterprise are as follows: Lease on the premises known as 612 South Spring Street, Los Angeles, and fixtures therein; Equity in 900 shares of stock of The American National Bank of Santa Monica which stock has been transferred to J. P. Shirley, with power of sale, as security for money advanced by him to this corporation as hereinafter set forth: Notes as follows: July 27, 1936
30 days demand 6%
$1000.00
Oct. 17, 1936
30 days demand6%
1000.00
Jan. 15, 1937
On demand 5% 7734.38
Total
$9,734.48
*52 It is understood and agreed that the capital paid into Geo. L. Browning & Co. on November 30, 1935, amounting to $10,000.00 shall be repaid to the investors as and when funds are available, plus interest at the rate of 6% and thereafter the parties hereto shall share in the joint enterprise as follows: J. P. Shirley
one half interest
N. D. Vaughan
one quarter interest
R. A. Martin
one quarter interest
It is further agreed that, whereas the undersigned are interested in the success of the Metropolitan Federal Savings & Loan Association of Los Angeles, they shall cooperate to the best interests of that association and act jointly on matters relating thereto in order to assure the success of said association and the other enterprises covered by this agreement. 1453 In 1954 Metropolitan Federal was converted into a state chartered savings and loan association pursuant to 12 U.S.C. section 1464(i). The successor association, Metropolitan State, was chartered by the State of California under the California Finance Code. Guarantee stock was issued by Metropolitan State. The conversion was accomplished in accordance with the requirements *53 of Federal and State laws. A resolution was adopted by the board of directors of MetropolitanFederal on July 19, 1954, approving the plan of conversion. The depositor-members of the Federal association, by a majority vote, approved the conversion. The State charter was issued to the new State association, establishing the required capital of Metropolitan State at $476,850, and granting to each depositormember of Metropolitan Federal the right to buy Guarantee shares in Metropolitan State in proportion to the amount of that depositor-member's deposit in Metropolitan Federal. These rights were assignable, and the management of Metropolitan Federal acquired rights from various depositormembers. Under the plan the rights to acquire stock of Metropolitan State had to be exercised by November 20, 1954, and some of the rights lapsed because the holders were not interested in exercising them but did not assign them to the management of Metropolitan Federal. A total of 4,335 Guarantee shares in Metropolitan State were purchased by members of Metropolitan Federal, or their assignees, and the sale price of each share was $110.00. * The payment for the 4,335 shares provided the required capital *54 of $476,850 for Metropolitan State. The stock was oversubscribed and an allocation was necessary under the plan of conversion which had been adopted. Employees of Metropolitan Federal solicited warrants for the purchase of Metropolitan State stock on behalf of the Metropolitan Federal management. The employees were permitted to exercise some of the warrants that were obtained by their solicitation. Rights to purchase 650 shares of stock of Metropolitan State were given to these employees. Katherine acquired 250 shares of Metropolitan State in her name and that of her mother, Louise Martin, and an additional 100 shares in her name alone. She had only a small amount deposited in Metropolitan Federal. Most of the warrants exercised by Katherine were received by her from the warrants assigned by depositormembers of Metropolitan Federal to the management of the association. Warrants for the purchase of 300 shares of Metropolitan State were distributed in varying numbers to other employees of Metropolitan Federal who were not officers of the association. Some *55 depositor-members subscribed for the stock to which their warrants entitled them. Emprise was incorporated in 1954 for the purpose of acquiring stock in Metropolitan State for the Shirley family, J. A. Spray, and Charles P. Gould. Its capital stock consisted of 75,000 shares of preferred stock with par value of $1 which were issued to the following persons for the following cash contributions: M
Name
Number ofpreferred shares
Cash con-tribution
Charles P. Gould
15,000
$15,000
Gunther J. Shirley
15,000
15,000
J. P. Shirley Trust
15,000
15,000
J. P. Shirley, Jr.
15,000
15,000
Joseph A. Spray 15,000
15,000
Totals
75,000
$75,000
The common stock of Emprise consisted of 1,000 shares par value $1. Six hundred shares of this stock were issued to members of the Shirley family, 200 shares to Charles P. Gould and members of his family and 200 to Joseph A. Spray and members of his family. Emprise subscribed to 2,890 shares of stock of Metropolitan State, filed 146.29 warrants and was allocated 2,753 shares. The total number of all warrants filed for the 4,335 shares of stock to be allocated was 396.48. In order to purchase the stock, Emprise *56 borrowed $297,000 on November 19, 1954, from the Union Bank. Emprise deposited $317,900 for the 2,890 shares for which it subscribed. When Emprise was allocated 2,753 shares, $15,070 was refunded, making a total cost of the 2,753 shares to Emprise of $302,830. On December 6, 1954, Emprise paid $62,000 to the Union Bank leaving a balance of $235,000 due the Union Bank with $23,500 due on the principal yearly and the entire remaining balance due January 2, 1960. The loan was secured by the pledge of its shares of Guarantee stock of Metropolitan State and was not otherwise secured or guaranteed. Subsequently Emprise acquired 55 additional shares of Metropolitan State stock. On February 4, 1959, Emprise entered into an agreement of sale of Metropolitan State stock calling for the sale to John S. Griffith of its shares and other shares at 1454 $1,175 per share subject to the condition that substantially all of the outstanding stock of Metropolitan State be sold and that Emprise give a warranty of good title to the stock. The closing for the transaction was May 15, 1959. Sometime prior to May 15, 1959, Katherine had made claims to an interest in the Metropolitan State stock held by *57 Emprise. In order that the sale might be consummated on May 15, 1959, Katherine and her mother (referred to as the Powell group) entered into an agreement with Emprise and its stockholders and John S. Griffith which was attached to the sales contract of May 15, 1959. This agreement provided as follows: THIS AGREEMENT, made this 15th day of May, 1959, by and between JOHN S. GRIFFITH, hereinafter sometimes referred to as "BUYER," and EMPRISE, INCORPORATED, a California Corporation, J. P. SHIRLEY, Jr., GUNTHER J. SHIRLEY, JOSEPH A. SPRAY, CHARLES P. GOULD AND LOUISE MARY SHIRLEY CORNELL, a married woman, hereinafter sometimes collectively referred to as the "EMPRISE GROUP," and KATHERINE POWELL and LOUISE E. MARTIN, hereinafter sometimes referred to as the "POWELL GROUP." This agreement is based upon the following recitals: (a) Buyer has heretofore entered into an agreement with Emprise, Incorporated, for the purpchase of 2,808 shares of the guarantee stock of Metropolitan Savings and Loan Association of Los Angeles, a California corporation, presently standing of record in the name of Emprise, Incorporated, at the purchase price of $1,175.00 per share. (b) Buyer has heretofore *58 offered to purchase all of the remaining shares of guarantee stock of Metropolitan Savings and Loan Association, a California corporation, including the 350 shares of such stock owned by the Powell Group, subject to certain conditions. (c) The Powell Group asserts certain claims against the Emprise Group and all of the stockholders of Emprise, Incorporated, which claims arise out of the acquisition by Emprise, Incorporated, of said 2,808 shares and all of which claims are denied by the Emprise Group and each of them. (d) Upon the Buyer's demand, the parties hereto have entered into this agreement to facilitate the transfer of title to the said 2,808 guarantee shares of Metropolitan Savings and Loan Association, a California corporation, to the Buyer free and clear of any and all claims asserted by the Powell Group as above mentioned, subject, however, to the preservation of all rights and claims of the Powell Group of every kind and character against the Emprise Group and the stockholders of Emprise, Incorporated as to the proceeds from the sale of the said 2,808 shares by Emprise, Incorporated to the Buyer. NOW, THEREFORE, in consideration of the mutual covenants and agreements *59 of the parties hereto, it is understood and agreed as follows: (1)(a) The Emprise Group, jointly and severally, and Joseph A. Spray, as the representative of and for and on behalf of all stockholders of Emprise, Incorporated related to said Joseph A. Spray by blood or marriage, Charles P. Gould, as the representative of and for and on behalf of all stockholders of Emprise, Incorporated related to said Charles P. Gould by blood or marriage, J. P. Shirley, Jr. and Gunther J. Shirley, jointly and severally, as the representatives of and for and on behalf of all stockholders of Emprise, Incorporated related to said J. P. Shirley, Jr. and Gunther J. Shirley, by blood or marriage, and Louise Mary Shirley Cornell, as the representative of and for and on behalf of all stockholders of Emprise, Incorporated related to said Louise Mary Shirley Cornell by blood or marriage, hereby covenant and agree that the sale of the 350 shares of stock held of record by the Powell Group and each of them to the Buyer, pursuant to the offer of the Buyer above described, the execution of this agreement by the Powell Group and each of them, the execution by the Powell Group and each of them, of any and all other *60 documents or acts in connection with said sale shall not in any manner whatsoever serve as an estoppel against or a waiver, relinquishment, release, limitation or impairment of the claims, demands and causes of action held or claimed by the Powell Group and each of them against the Emprise Group, the stockholders of Emprise, Incorporated, and each of them, or the prosecution thereof. (b) The Powell Group, jointly and severally, covenant and agree that the sale of the shares of stock held of record by Emprise, Incorporated to Buyer, pursuant to the offer of the Buyer above described, the execution of this agreement by the Emprise Group and each of them, the execution by the Emprise Group and each of them of any and all other documents or acts in connection with said sale shall not in any manner whatsoever serve as an estoppel against or a waiver, relinquishment, release, limitation or 1455 impairment of any claims, demands and causes of action held or claimed by any and all stockholders of Emprise, Incorporated and each of them and by the Emprise Group and each of them against the Powell Group and each of them, or the prosecution thereof. (2)That the Powell Group and each of *61 them hereby waive any right that they or each of them may have or claim to have, in all or any of the said 2,808 shares of guarantee stock of Metropolitan Savings and Loan Association of Los Angeles, a California corporation, presently standing of record in the name of Emprise, Incorporated (but not as to the proceeds of the sale thereof) and provided further that the Powell Group and each of them hereby waive and relinquish any and all claims, demands and causes of action held or claimed to be held by them and each of them against Metropolitan Savings and Loan Association, a California corporation, and against the Buyer, his heirs, executors, administrators, successors and assigns on account of the purchase or ownership of the 2,808 shares of guarantee stock of Metropolitan Savings and Loan Association, a California corporation, described above. (3) Emprise, Incorporated, covenants and agrees that it will not distribute, pay or otherwise transmit any of of (sic) the proceeds of the sale of the above 2,808 shares of the said stock received by it to any of its stockholders, their successors or assigns, on or before September 1, 1959, without the written consent of the Powell Group *62 and each of them first had and obtained; provided, however, that nothing herein contained shall prohibit Emprise, Incorporated from using $300,000.00 of the said proceeds to redeem the issued and outstanding preferred stock of said company, to pay off indebtednesses of Emprise, Incorporated and for general corporate purposes of said company. (4) The terms of this agreement shall be binding upon and inure to the benefit of the heirs, executors, administrators, successors and assigns of each of the parties hereto. (5) A condition precedent to the effectiveness of this agreement is the consummation of the sale of all of the above described shares of stock to the Buyer and the payment of the full purchase price in cash therefor, pursuant to the terms of the above described agreement and offer, and this agreement shall be wholly ineffective until such consummation and payment. (6) Execution of this agreement shall not constitute an admission of liability by any of the parties hereto. On February 2, 1959, Emprise adopted a plan of dissolution. After the sale of the Metropolitan State stock on May 15, 1959, Emprise redeemed its preferred stock. On December 28, 1959, it made a partial *63 distribution in liquidation to its shareholders and on January 8, 1960, made a final liquidation distribution to its shareholders. In the transaction which closed May 15, 1959, Emprise received $3,299,400 for its 2,808 shares of Metropolitan State stock and Katherine received $411,250 for her 350 shares. All of the petitioners in this case reported their gain on this transaction as long-term capital gain. On July 31, 1959, Louise E. Martin and Katherine as special administratrix of the estate of R. A. Martin, deceased, as plaintiffs brought an action in the Superior Court of the State of California in and for the County of Los Angeles against Joseph A. Spray and Charles P. Gould, individually; Spray Gould & Bowers, a partnership composed of Joseph A. Spray, Charles P. Gould and Charles W. Bowers; Emprise Incorporated; J. P. Shirley, Jr., Gunther J. Shirley, Robert G. Shirley, Joseph A. Shirley, Louise Shirley Cornell; and all other shareholders of Emprise. The action was filed as case No. 727,826 and the complaint was to establish a constructive trust, for an accounting, and for damages. The gist of the complaint was that there was a joint venture entered into by R. A. Martin, *64 J. P. Shirley, Sr., and N. D. Vaughan, which was partly written and partly oral. The written agreement was dated October 5, 1937, and signed by the three men. By the terms of the agreement the three parties agreed to cooperate for the best interests of Metropolitan Federal and to act jointly in matters relating thereto in order to assure the success of the association and any other business organization either operating or which might be later organized to carry out the letter and spirit of the agreement. The proceeds were to be distributed 50 percent to J. P. Shirley, Sr., and 25 percent to each R. A. Martin and N. D. Vaughan. In about the year 1945 N. D. Vaughan withdrew from the joint venture with R. A. Martin acquiring his interests. An asset of the joint venture having great value at the date of the death of R. A. Martin was the right to acquire legally the ownership of the goodwill and the undistributed profits and reserves of Metropolitan Federal which totaled approximately $2 million. This right could be exercised by the joint venture through the conversion of Metropolitan Federal to a State chartered association. Another asset of the joint venture was the availability of *65 100 percent financing of the 1456 purchase of stock in a State chartered association provided that the assets were transferred to the State association, and at least a majority of the shares of the State chartered association were acquired by the joint venture, and that all shares so purchased by the joint venture were pledged to secure the loan. The complaint also contained allegations that Joseph A. Spray, Charles P. Gould, and their law firm were attorneys for R. A. Martin and all members of his family from 1937 until his death, were attorneys for his estate, and were attorneys for the special administratrix, Katherine. As such, they held the trust and confidence of the plaintiffs and they had a fiduciary duty to disclose and protect the interests and assets of R. A. Martin and his estate in Metropolitan Federal. Instead of protecting and disclosing R. A. Martin's interests and assets in Metropolitan Federal, they appropriated these interests and assets for themselves by electing Charles P. Gould as a director and eliminating Louise Martin and Katherine from any control or arrangement in Metropolitan Federal. Because of their fiduciary duties, a constructive trust should be *66 imposed upon the shares of the guarantee stock each acquired at the conversion of Metropolitan Federal into Metropolitan State, such shares being 40 percent of the guarantee stock acquired by Emprise. The complaint also contained allegations that joint venturer, J. P. Shirley, Sr., and his nominees, J. P. Shirley, Jr., and Gunther as directors of Metropolitan Federal, together with Spray and Gould, secretly conceived and carried out plans to appropriate for themselves the interests of the plaintiffs in the assets of the joint venture. The plan was to exclude Louise E. Martin and Katherine from the board of directors of MetropolitanFederal, to convert Metropolitan Federal to a State chartered association with guarantee stock, to create Emprise, the alter ego of defendants, to acquire and hold the majority of the guarantee stock, and to cause Emprise to use one of the assets of the joint venture, namely, the availability of 100 percent financing, to purchase the guarantee stock. By reason of defendants' concealment of facts and their acts in appropriating for themselves the assets of the joint venture, all of the shares of the common stock of Emprise owned of record by Spray and Gould *67 and their families and 16 2/3 percent of the shares of common stock held by the Shirley family were held in constructive trust for the use and benefit of the plaintiffs, and that Emprise was the constructive trustee for plaintiffs of the proceeds received from the sale of one-half of the guarantee stock it held in Metropolitan State and as trustee, it should be required to account to plaintiffs for all the benefits and proceeds received by Emprise and the other defendants. The complaint further alleged that Katherine first learned that defendants had obtained the guarantee stock by use of the joint venture asset in February 1959 and that Louise E. Martin first learned this fact from her daughter Katherine. The prayer to the complaint contained the following: WHEREFORE, plaintiffs pray judgment against the defendants, and each of them as follows: 1. That defendants be adjudged to hold in constructive trust for the use and benefit of plaintiffs 50% of all of the profits, monies, assets and shares acquired by them in the conversion of the Federal Association to a State Association and the receipts of the sale of the guaranty stock of the State Association. 2. That the defendants *68 be made to account for the monies, profits, assets and shares of stock they hold as constructive trustee for the use and benefit of plaintiffs. 3. For judgment against defendants Joseph A. Spray, Charles P. Gould. C. W. Bowers, Spray, Gould & Bowers, Gunther J. Shirley, J. P. Shirley, Jr. and Emprise Incorporated for $1,650,000.00 as compensatory damages. 4. For judgment against Joseph A. Spray, Charles P. Gould, C. W. Bowers, Spray, Gould & Bowers, Gunther J. Shirley, J. P. Shirley, Jr. and Emprise Incorporated for $250,000.00 as exemplary damages. * * * On August 14, 1959, at a special meeting of the board of directors of Emprise, the allegations of the complaint filed by Katherine and her mother were discussed and the following resolution adopted: RESOLVED, That this corporation shall indemnify and hold harmless each of its officers, Directors, and Shareholders from any loss, cost, or expense, including attorneys' fees, arising out of or in any way connected with that certain action entitled "Martin, et al. v. Spray, et al.," No. 727,826, now pending in the Superior Court of the State of California, in and for the County of Los 1457 Angeles, or any other similar action *69 which may be hereafter filed against the said corporation, including without limitation, the defense of the said action, or of any such action. On October 20, 1962, plaintiffs Louise E. Martin and Katherine as special administratrix of the estate of R. A. Martin, deceased, filed an amended complaint in case No. 727,826, alleging misrepresentation and conspiracy to deprive the plaintiffs of their right to participate in the proceeds of stock of Metropolitan State by the defendants, based on substantially the same factual allegations set forth in the original complaint. The prayer of the amended complaint read in part as follows: WHEREFORE, plaintiffs jointly pray judgment against the defendants, and each of them, as follows: (1) For general damages in the sum of One Million, Three Hundred Thousand Dollars ($1,300,000.00); (2) For exemplary damages against each of the defendants in the amount of Fifty Thousand Dollars ($50,000.00), or a total sum of Two Hundred Fifty Thousand Dollars ($250,000.00). ON THE SECOND CAUSE OF ACTION: (3) That all stocks and/or monies heretofore transferred from the joint venture to each and all of the defendants named herein, whether in its original *70 form or in some transmuted form, be impressed with a constructive trust for the benefit of the plaintiffs, and that defendants, and each of them, be made to account to the plaintiffs, as constructive trustees, for all monies, profits and interests realized from the possession and/or control of such assets; * * * Attached to both the original and amended complaints was a copy of the agreement of John S. Griffith, the Emprise group and the Powell group which had been attached to the contract of sale of the Metropolitan stock dated May 15, 1959. On August 26, 1959, Katherine, secretarytreasurer, and director, and Edward Powell, director of Sealand, filed petition No. 729509 in the name of Sealand in the Superior Court of the State of California in and for the County of Los Angeles against Emprise, Joseph A. Spray and Charles P. Gould, as individuals; Spray, Gould & Bowers, a partnership; J. P. Shirley, Jr., Gunther J. Shirley, Robert Shirley, Joseph Shirley, Louise Shirley Cornell and all other shareholders of Emprise. The complaint alleged that the individual defendants caused the corporate defendant, Emprise, to misappropriate the rights of Sealand and its corporate opportunity *71 and that defendants should be required to account to plaintiff for all corporate profits held by Emprise as constructive trustee for the trust and benefit of plaintiff. The allegations of fact in the petition were in substance the same as the factual allegations contained in the petition filed by Louise E. Martin and Katherine on July 31, 1959, except that in the Sealand petition it was alleged that the sole purpose for the formation of Metropolitan Federal was to obtain business opportunities and benefits for Sealand. The prayer of the complaint read in part as follows: WHEREFORE, Plaintiffs pray judgment against the defendants, and each of them, as follows: 1. That defendants be adjudged to hold in constructive trust for the use and benefit of plaintiff all of the profits, moneys, assets and shares acquired by them in the conversion of the Federal Association to a State Association and the receipts of the sale of the guarantee stock of the State Association. 2. That the defendants be made to account for the moneys, profits, assets and shares of stock they hold as constructive trustee for the use and benefit of the plaintiff. 3. For judgment against defendants, Gunther J. *72 Shirley, J. P. Shirley, Jr., Joseph A. Spray, Charles P. Gould, C. W. Bowers, Spray, Gould & Bowers, and Emprise Incorporated for $3,300,000.00 as compensatory damages. 4. For judgment against defendants Gunther J. Shirley, J. P. Shirley, Jr., Joseph A. Spray, Charles P. Gould, C. W. Bowers, Spray, Gould & Bowers, and Emprise Incorporated for $250,000.00 as exemplary damages. * * * Sometime prior to February 17, 1960, defendants filed a motion to dismiss the complaint of Sealand on the basis that Katherine as secretary-treasurer and director, and Edward Powell as director did not have authorization or power to file the complaint on behalf of Sealand. On April 1, 1960, the motion of the defendants was granted and a Judgment of Dismissal and for Costs entered. This decision was appealed to the Second District Division One of the Appellate Court of California which affirmed the lower court's decision. The plaintiff sought a hearing by the Supreme Court of 1458 California which was denied on May 16, 1961. After the decision by the Appellate Court and denial by the Supreme Court of California to hear an appeal, Katherine on September 7, 1961, filed a stockholders' derivative suit *73 in the Superior Court of the State of California in and for the County of Los Angeles, which was numbered 779210. The allegations of this complaint and its prayer for relief were substantially the same as those contained in the complaint filed by Katherine and Edward Powell for Sealand in August of 1959. On November 6, 1961, J. P. Shirley, Jr., Gunther, Joseph A. Spray, and Charles P. Gould filed a complaint in the Superior Court of the State of California in and for the County of Los Angeles, numbered 783,261 against Katherine, Edward Powell, and their attorneys. The complaint sought damages for attorneys' fees paid by the plaintiffs in defense of the unauthorized action brought by Katherine and Edward Powell on behalf of Sealand. The defendants, Katherine and Edward Powell and their attorneys, demurred to the suit, and the Court upheld the demurral on the basis that under California law attorneys' fees are not recoverable from the opposing party either as costs, damages, or otherwise in the absence of express statutory or contractual authority, especially in the case of a non-malicious filing of a suit in the name of another. A final decision was never rendered on the merits *74 in the cases because the parties reached a settlement and entered into a settlement agreement on January 22, 1963. The settlement agreement provided that petitioners in the instant case and the trustees representing the trusts formed for petitioners' various children would pay in cash to Katherine as Administratrix with WillAnnexed of the Estate of R. A. Martin, $137,500. In addition all suits involving the controversy would be dismissed and a general release would be given by the various parties to the agreement of: any and all claims of whatever kind and character whatsoever, including but not limited to any and all claims whatsoever arising out of the conversion of Metropolitan Federal Savings and Loan Association into a state association, and the matters and facts alleged in action No. 727,826 and 783,261 and Civil Appeal No. 26895 in the District Court of Appeal, Second Appellate District, which claims may be existing at any time up to and including the effective date thereof. Each of said releases includes all unknown as well as known claims, and each of the releasors acknowledges herewith that he is familiar with the provisions of section 1542 of the Civil Code regarding unknown *75 claims and expressly waives the application of section 1542 to such release. Sealand executed a general release of any and all claims against all parties and the agreement further provided that Katherine offered to sell to Gunther all of her stock in Sealand or to purchase all of the stock held by Gunther in Sealand, each party holding 50 percent of the stock. Gunther agreed that he would elect to either purchase Katherine's stock or sell his stock to her within 5 days of the date of the settlement agreement. The purchase price of the stock was to be one-half of the net worth of the corporation as shown on the books of the corporation on January 15, 1963, and was to be paid on or before 35 days from the date of the settlement agreement. The agreement contained a specific statement that petitioners in the instant case did not by executing the agreement acknowledge that there was any merit to Katherine's claims but made the agreement solely to avoid further expenses of litigation. The $137,500 which the settlement agreement provided would be paid to Katherine was paid by the following persons in the amounts shown: Contributor
Amount
Robert G.Shirley
$ 5,500.00
Louise Mary Shirley Cornell
5,500.00
Joseph A. Shirley
5,500.00
J. P. Shirley, Jr.
6,875.00
Jacqueline C. Shirley
5,500.00
Charles P. Gould
6,875.00
Mary D. Gould
6,875.00
Gunther J. Shirley and Helen Adair Shirley
7,562.50
Gunther J. Shirley
8,937.00
Loeta Spray
6,875.00
Joseph A. Spray
6,875.00
Terry Spray Trust
6,875.00
Joseph L. Spray Trust
6,875.00
Lawrence K. Gould
13,750.00
Trust for J. P. Shirley, Jr. childen
20,625.00
Trust for Gunther J. Shirley children 16,500.00
Total $137,500.00
*76 Petitioners claimed deductions for the amounts paid to Katherine and for attorney's fees connected with the litigation in their Federal income tax returns for the calendar year 1963 in the following amounts: 1459 Compromisesettlement
Attorneys' fees
Total
Gunther J. and Helen A. Shirley
$16,500.00
$5,249.94
$21,749.94
William E. and Louise S. Cornell
5,500.00
0
5,500.00
Mary D. Gould
6,875.00
663.75
7,538.75
Loeta Spray
6,875.00
601.25
7.476.25
Charles P. Gould
6,875.00
663.75
7.538.75
Joseph A. Spray
6,875.00
601.25
7,476.25
J. P. Shirley, Jr., and Jacqueline C. Shirley
12,375.00
4,667.24
17,042.24
All of the petitioners listed these deductions as "other deductions" on page 2 of their return and described the item as expenses for the management, conservation and maintenance of property held for the production of income. Respondent disallowed all these deductions as deductions from ordinary income but treated the amounts as capital losses allowable to the extent provided for allowance of capital losses and treated the unused portions as capital loss carryovers. Opinion Petitioners on their income tax returns and in *77 their petitions claimed that their payments to Katherine and for legal fees in connection with the litigation which was settled by such payments were deductible under section 212, as expenses for the management, conservation, or maintenance of property held for the production of income. In their petitions they alleged in the alternative that the amounts are deductible as business losses under section 165. On brief petitioners contend that the amounts are deductible as expenses for the management, conservation, or maintenance of property held for the production of income or are deductible under section 162 as ordinary and necessary business expenses. [5] The facts on which petitioners primarily rely to support their contentions are that the suits brought by Katherine in addition to claiming that the stock of Metropolitan State owned by Emprise was impressed with a constructive trust, also claimed compensatory damages in an amount of $3,300,000 and exemplary damages of $250,000. Petitioners contend that the allegations of the complaints charged them with fraud, breach of trust, and conspiracy. They state that the two defendants who were lawyers were necessarily required to defend the *78 attack on their reputations in order to protect their legal practice and that the other defendants were likewise, because of their positions in business, required to defend themselves against Katherine's attack on their reputations. Respondent takes the primary position that the entire suit centered around the right of Emprise and other defendants as stockholders of Emprise to retain the Metropolitan State stock which Emprise had acquired or the proceeds from the sale of such stock and that *79 therefore the payments made in settlement of Katherine's suits and for attorneys' fees in connection therewith were made to protect petitioners' title to property. [6]
Respondent contends in the alternative that under the facts here present the payments *80 were so connected with the long-term capital gain received by the various petitioners from the sale of the Metropolitan State stock after Emprise had adopted a resolution of dissolution that the amounts would be required to be treated as capital losses under the holding of Arrowsmith v. Commissioner, 344 U.S. 6 (1952), and cases following that decision which involved payments of judgments in suits connected with capital transactions such as Rees Blow Pipe Manufacturing Co., 41 T.C. 598 (1964), affirmed 1460 per curiam 342 F. 2d 990 (C.A. 9, 1965). Except for this alternative contention of respondent, neither party takes the position that the fact that the Metropolitan State stock had been sold prior to the actual commencement of Katherine's suits would cause the payments to settle the suits to be of a character different from that which would exist if Emprise had held the Metropolitan State stock at the time the suits were filed. Petitioners stress the small amount of the settlement as compared to the amounts claimed in the litigation and the statement contained in the settlement agreement that petitioners do not concede any merit to *81 the various suits as in substance showing that the payments made to Katherine as well as the actual attorneys' fees, were in effect all attorneys' fees. However, in our view even if the payments had been only for attorneys' fees they were to be treated as capital expenditures if paid to protect title to property. Therefore, we do not consider this argument of petitioner's to be helpful in disposing of the issue in this case. As we stated in Joseph Lewis, 27 T.C. 158, 164 (1956), affirmed 253 F. 2d 821 (C.A. 2, 1958), it is "firmly established that expenses incurred in protecting title to property are not deductible but are capital in nature." We therefore consider that our first problem is to determine from the facts here present whether the suits brought by Katherine were primarily an attempt to obtain the Metropolitan State stock or the proceeds from its sale from petitioners or were primarily to obtain compensatory and exemplary damages from petitioners because of their wrongful acts. If the suits are to obtain a portion of the stock of Metropolitan State held *82 by Emprise or the proceeds from the sale thereof, it follows that the payments here in issue were made by petitioners to protect their title to that stock and the proceeds from the sale thereof. Munson v. McGinnes, 283 F. 2d 333 (C.A. 3, 1960). If the object of the suits was to obtain damages from petitioners, it would not necessarily follow that the payments in settlement of the suits and for attorneys' fees would be deductible. It would still be necessary to consider all the surrounding circumstances to determine the nature of the payments. It would be necessary for petitioners to show that the suits in connection with which the payments were made proximately resulted from their business or from a transaction entered into for profit as distinguished from their right to retain property or the proceeds of the sale of a capital asset. Kornhauser v. United States, 276 U.S. 145 (1928), and Munson v. McGinnes, supra. Petitioners argue that they considered the suits to be without merit but made the payments to avoid litigation expenses and litigation that might cause them embarrassment. *83 The motives of the taxpayer in making a payment have been considered in some cases but these motives have not been considered controlling. The controlling fact in such cases was considered to be the substance of the litigation. United States v. Wheeler, 311 F. 2d 60 (C.A. 5, 1962). In our recent opinion in Stass Reed, 55 T.C. - (Oct. 8, 1970), we held the controlling factor to be the "origin of the claim." There are a number of cases which have concluded that payments to settle litigation and for attorneys' fees in connection therewith were partially to defend title to property and partially deductible expenses. See Larchfield Corporation v. United States, 373 F. 2d 159 (C.A. 2, 1966). Where the payments are for such dual purposes a proration is made between the deductible amount and the amount of the capital expense. However, in these cases there has been a reasonable basis for allocation. The amounts of the expenditures allocated as payments of litigation expenses for defending title to property have been held to be capital in nature and not deductible. Lewis v. Commissioner, 253 F. 2d 821, 827 (C.A. 2, 1958), affirming 27 T.C. 158 (1956). *84 The cases allowing a deduction where a question of title was involved are cases which dealt primarily with an accounting for income from the property and the question of title was merely incidental. Lewis v. Commissioner, supra, at 827 and cases there cited. The facts that we have set forth show that the litigation here involved was occasioned by Emprise being formed by all parties who had participated in the formation of Metropolitan Federal except the heirs of Katherine's father and the acquisition by Emprise for its stockholders to a large extent with borrowed funds of a disproportionately high portion of the stock of Metropolitan State upon the conversion of Metropolitan Federal to a State Savings and Loan Association. Petitioners stressed 1461 the error of the allegations in Katherine's various suits that the acquisition by Emprise of Metropolitan State stock was 100 percent financed by borrowings. However, in our view the fact that a small portion of the funds with which Emprise acquired its stock of Metropolitan State came from payments made into the company by the stockholders and not from borrowed funds does not change the nature of the suits brought by *85 Katherine and her mother. Petitioners also stress that what Katherine wanted was "money" and that that was all that was involved in the suits. This is an oversimplification of the problem since under many circumstances where the issue is title to property the suit may well seek a money judgment, particularly where the property has been sold by the defendant in the suit. See Munson v. McGinnes, supra. In our view the facts we have set forth show that the litigation between Katherine and petitioners in the instant case was directly related to the acquisition and retention by petitioners through Emprise of the Metropolitan State stock or the proceeds therefrom. Not only were the allegations seeking a constructive trust related to the acquisition and retention of this stock but also the allegations seeking compensatory and exemplary damages. The entire litigation was related to Katherine's claim to some of the Metropolitan State stock acquired by Emprise. It follows that petitioners' payments to Katherine to settle these suits and for attorneys' fees in connection therewith are related to the retention by petitioners of the proceeds from the sale of the Metropolitan State *86 stock and that the "origin of the claim" involved in these suits was Katherine's claim to some of the Metropolitan State stock acquired by Emprise. If any portion of the payment was allocable to the incidental attempt of Katherine to obtain damages for what she alleged to be breach of trust and fraud in not permitting her to participate in Emprise, we have been given no basis for making any reasonable allocation to this incidental facet of the case of any portion of the payments here involved. See Stass Reed, supra. In any event Katherine's claim to any damages had its origin in her claim to some of the Metropolitan State stock acquired by Emprise. We conclude that the payments here in issue were in essence payments in defense of title to property. Because of the nature of the litigation which was settled, respondent was correct in disallowing the deductions for the settlement payments and attorneys' fees claimed by petitioners and treating the payments as capital losses. Therefore, we do not reach the question of whether in any event the payments here would be required to be treated as capital losses under the rationale of Arrowsmith v. Commissioner, supra.
Decisions *87 will be entered for respondent. Footnotes
1. Cases of the following petitioners are consolidated herewith: William E. Cornell and Louise S. Cornell, Docket No. 2653-68; Mary D. Gould, Docket No. 2654-68; Loeta Spray, Docket No. 2655-68; Charles P. Gould, Docket No. 2656-68; Joseph A. Spray, Docket No. 2657-68; and J. P. Shirley and Jacqueline C. Shirley, Docket No. 2658-68.↩
2. All references are to the Internal Revenue Code of 1954.↩
*. By official Tax Court amendment, dated 11-23-70 and signed by Judge Scott, the fact that the Goulds and Sprays filed separate returns in l963 was reflected. - CCH.↩
3. J. P. Shirley, Sr., was the father of J. P. Shirley, Jr., Gunther J. Shirley, Joseph A. Shirley, Robert G. Shirley, and Louise Mary Shirley Cornell. ↩
4. R. A. Martin was the husband of Louise E. Martin and father of Katherine E. Martin Powell.↩
*. By official Tax Court amendment, dated 11-23-70 and signed by Judge Scott, this figure was changed from $110,000. - CCH.↩
5. Respondent in his reply brief asserts that the claimed deduction under sec. 162, I.R.C. 1954, raises a new issue on brief and that this issue should not be considered by the Court. Petitioners' contentions based on sec. 212 and 162 are predicated on the same factual arguments. Under the circumstances we do not consider the contention that sec. 162 might be applicable to the claimed deduction to raise a new issue on brief. Apparently petitioners do not now contend that the payments should be treated as a loss. In any event it is clear that they are not deductible as a business loss under the holding in Kornhauser v. United States 276 U.S. 145↩ (1928).
6. Sec. 1.212-1(k), Income Tax Regs., provides as follows: (k) Expenses paid or incurred in defending or perfecting title to property, in recovering property (other than investment property and amounts of income which, if and when recovered, must be included in gross income), or in developing or improving property, constitute a part of the cost of the property and are not deductible expenses. Attorneys' fees paid in a suit to quiet title to lands are not deductible; but if the suit is also to collect accrued rents thereon, that portion of such fees is deductible which is properly allocable to the services rendered in collecting such rents. Expenses paid or incurred in protecting or asserting one's right to property of a decednt as heir or legatee, or as beneficiary under a testamentary trust, are not deductible.↩