**Donald E. KUTZ and Mary E. Kutz, his wife, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Luther W. McCOY and Inez M. McCoy, his wife, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civ. Nos. 73-48, 73-47.**

United States District Court, for the Middle District of Pennsylvania.

April 29, 1975.

Lloyd R. Persun, Howell C. Mette, Shearer, Mette, Hoerner & Woodside, Harrisburg, Pa., for plaintiffs.

Scott P. Crampton, Asst. Atty. Gen., Jerome Fink, David J. Curtin, Attys., Dept. of Justice, Washington, D. C., S. John Cottone, U. S. Atty., Scranton, Pa., for defendant.

## MEMORANDUM AND ORDER

HERMAN, District Judge.

The plaintiffs filed suit seeking the return of tax deficiencies paid under protest. The parties entered into a complete stipulation of facts. The following history of the case includes those stipulated facts upon which the court relies in making its decision.

Luther W. McCoy, Donald E. Kutz and three other persons incorporated the McCoy Electronics Company (MEC) in 1952 under the laws of Pennsylvania. McCoy held approximately one-third of the stock with each of the remaining persons owning one-sixth. In 1960 MEC and Oak Manufacturing Co. began negotiating the sale of all shares of MEC to Oak. The initial offer of $600,000 was rejected by MEC. On February 22, 1961 the parties agreed to a maximum sales price of $800,000 to be paid over a period of time. Oak agreed to pay $450,000 initially, followed by three annual payments not to total more than $350,000. The exact amount of these payments was directly tied to the net earnings of MEC in each of the three years following purchase. Based on the agreement, however, the payments could not exceed $125,000 for 1961, $125,000 for 1962 and $100,000 for 1963. It was, in effect, an installment sale with an adjustable ultimate price. The three inactive shareholders concluded that the net income provision was too risky. Instead they agreed, before the sale to Oak to each take $105,000 from the initial $450,000 payment as complete satisfaction for their shares.

In hopes of securing the maximum payments, Kutz and McCoy entered into an oral agreement on February 23, 1961 with four key employees of MEC. The agreement was reduced to writing in the Spring of 1963. It assured the employees a total maximum of $35,000 over the three years if MEC's net income was sufficient to secure to Kutz and McCoy the maximum payments.[1] The key men were to be paid after the annual installment payment from Oak, and only in proportion to the net income of MEC. During each of the three years MEC earned enough to entitle the plaintiffs to the maximum payments.

The plaintiffs made the key men payments as promised, claiming the money from Oak as a capital gain and deducting the key men payments from ordinary income. The IRS disallowed the deduction saying it should have been used instead to reduce the amount of gain. The plaintiffs paid the tax due plus interest, under protest, and filed the instant suit to recover the sum.[2]

The plaintiffs, the burdened parties, urge the appropriateness of the deductions based on 26 U.S.C. § 212:

> "In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year—
>
> (1) for the production or collection of income;
>
> (2) for the management, conservation, or maintenance of property held for the production of income; or
>
> (3) in connection with the determination, collection, or refund of any tax."

Plaintiffs argue that the key man payments qualify under the "production or collection of income" subsection. Further, they rely on Treasury Regulation 1.212–1(b) which declares that income "for the purpose of section 212 . . . is not confined to recurring income but applies as well to gains from the disposition of property."

---

1. Both Kutz and McCoy were carried on the Oak payroll as salaried employees in an unspecified capacity during each of the three years in question. Their salaries are not here at issue.

2. Mary E. Kutz appears as a plaintiff in Civil 73–48 and Inez M. McCoy appears as a plaintiff in Civil 73–47 solely because they signed and filed joint returns with their husbands in each of the relevant tax years.

In Woodward v. Commissioner, 397 U.S. 572, 574–75, 90 S.Ct. 1302, 1305, 25 L.Ed.2d 577, 581 (1970), the unanimous Court observed:

"If an expense is capital, it cannot be deducted as 'ordinary and necessary,' . . . under § 212."

■ The issue, therefore, reduces itself, in our view, to whether or not the key man payments were capital expenses which is determinative of the availability of § 212. It was Woodward which formalized the so-called "origin" test. In sum, the test is whether the origin of the expense is the process of acquisition (or sale) of a capital asset.

The plaintiffs have argued that certain language in Woodward indicates that the origin test does not apply in all § 212 cases:

"The standard here pronounced may, like any standard, present borderline cases, in which it is difficult to determine whether the origin of particular litigation lies in the process of acquisition. . . ." 397 U.S., at 578, 90 S.Ct. at 1306, 25 L.Ed.2d, at 583.

Clearly, the applicability of the test turns on whether the expense was acquisition related, and therefore whether it is capital in nature. However, the plaintiffs have erroneously attempted to extrapolate that notion into an argument that the origin test only applies in *certain* capital expenditure cases. We find nothing in Woodward which in any way exempts from the capital expense category any expense arising out of the acquisition process. The only "borderline" is the factual determination of whether the expense was acquisition related. If so, then the expense is a capital one and § 212 is unavailable. In short, the origin test is applied uniformly, but whether the facts of a case satisfy that test of course, determines if the "border" is crossed.

The argument of the plaintiffs seems to be that acquisition of a capital asset is not covered by Woodward if the agreement is consummated prior to incurring the deducted expenses. In effect, the plaintiffs attempt to argue that an expense is a capital expenditure only if it satisfies a "but for" test. That is, but for the expenditure in dispute, the acquisition would not have been consummated. So arguing, the plaintiffs note that the agreement of sale to Oak was signed prior to the creation of the key man agreements.

The consummation test offered by the plaintiffs ignores that portion of the Woodward companion case, United States v. Hilton Hotels Corp., 397 U.S. 580, 583–84, 90 S.Ct. 1307, 1309, 25 L.Ed.2d 585, 588 (1970), which states:

"Noting that 'the proceeding was not necessary to the consummation of the merger nor did it function primarily to permit the acquisition of the . . . shares,' the [circuit] court found that the 'paramount purpose of the appraisal proceeding was to determine the fair value of the . . . shares. . . .'

\* \* \* \* \* \*

"This is a distinction without a difference. . . . whether title passes before or after the price is determined. Determination and payment of a price is no less an element of an acquisition by purchase than is the passage of title to the property. In both Woodward and this case, the expenses were incurred in determining what that price should be . . . ."

Indeed, it was in Woodward wherein the Court declared that "where property is acquired by purchase, nothing is more clearly part of the process of acquisition than the establishment of a purchase price." 397 U.S., at 579, 90 S.Ct. at 1307, 25 L.Ed.2d, at 583. Two points bear note at this juncture. First, the consummation date upon which the plaintiffs put great emphasis is not truly a final date for all purposes. That is, the date Oak agreed to buy and the plaintiffs agreed to sell did not include a final fixing of the sale price. On the contrary, the sale price was variable de-

pending on the income performance of MEC during each of the next three years. Part and parcel of the agreement of sale was the provision that the sale price included a sum certain immediately, followed by a speculative amount which became certain based on each year's net income. Before any income production by MEC, the plaintiffs entered into their key man agreement in a direct effort to secure a larger sale price on their capital assets.

Second, this court finds it significant that the amounts of the annual payments (directly influenced by the key men) were reported as capital gains by both plaintiffs in all three years. The plaintiffs attempt to circumvent that fact by arguing that the payments were "income" within the meaning of Treasury Regulation 1.212–1(b). As noted earlier, § 212 and its attendant regulations are not even available if the expense is denominated as capital. More important, the term "income" is not dispositive of whether the "income" is treated as ordinary or capitalized.

In Munson v. McGinnes, 283 F.2d 333, 335 (3d Cir. 1960), the court observed:

"[A] nonbusiness expense related to selling may qualify for a more advantageous deduction from gross income as an 'ordinary and necessary [expense] * * * for the production of collection of income' under Section 212 of the 1954 Code. This possibility is suggested and emphasized by the explicit provision of the Regulations promulgated under Section 212 that 'the term income for the purpose of Section 212 * * * is not confined to recurring income but applies as well to gains from the disposition of property'. C.F.R. 1960, § 1.212–1(b). . . ."

This language appears to support the plaintiffs' argument. The Munson ruling goes one step further to qualify the potentially misleading wording of the regulation:

"However, the same section of the Regulations makes it clear that all expenses connected with the gainful disposition of property are not thus deductible. Indeed, it is explicitly stated that deductions for 'capital expenditures are not allowable * * *' § 1.212–1(n). The sense of this seems to be that a capital expenditure is not to be treated as an 'ordinary * * * expense' within the meaning of Section 212." 283 F.2d, at 335.

Finally, the Munson decision, certainly viable law when combined wth Woodward, seems to uniformly reject any attempt to get the benefit of capital gains treatment, yet deduct a capital expense from ordinary income:

"As an additional consideration, we are the more disposed to approve the capitalization of the item in suit because a contrary conclusion would enable a taxpayer to benefit inequitably from the circumstance that ordinary income and capital gains are taxed at different rates. Suppose the amount in excess of cost realized from the sale of a capital item is exactly equal to the expenditures necessary to accomplish the sale and allocable solely to it. If such expense is capitalized the taxpayer's return will show no capital gain and, for tax purposes, the entire transaction has no effect. This seems fair. But if the taxpayer reports his profit apart from this expense as a capital gain and then deducts the expense from gross income, in which only a part of the capital gain is included, he actually reduces his income tax through a transaction which, in a business sense, has resulted in neither gain nor loss. We think this should not be permitted unless it is plainly required by the tax laws. We have already pointed out that in our view the tax laws may reasonably be construed in a way which avoids such a consequence." 283 F.2d, at 337.

■ This court holds that whether an expense precedes or follows the formal acquisition date of a capital asset is not

determinative of whether the expense is acquisition related and hence a capital expenditure.

The plain requirement spoken of in Munson is to be measured by the test set down in Woodward. Applying that test, the court concludes that the expenses in question were clearly capital in nature and thus not deductible from ordinary income.

Judgment will therefore be entered in favor of the United States.